**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**March 20, 2013**

# In the Court of Appeals of Georgia

A12A2420. LEE v. THE STATE.

BRANCH, Judge.

Rebel Keith Lee was tried by a Douglas County jury and convicted of two counts of aggravated assault,[1] and a single count each of theft by receiving stolen property,[2] fleeing or attempting to elude a police officer,[3] obstruction of a law enforcement officer,[4] failure to stop at or return to the scene of an accident,[5] and

---

[1] OCGA § 16-5-21 (a) (2).

[2] OCGA § 16-8-7 (a).

[3] OCGA § 40-6-395 (a).

[4] OCGA § 16-10-24 (a).

[5] OCGA § 40-6-270 (a).

reckless driving.[6] He now appeals from the denial of his motion for a new trial, asserting that the evidence was insufficient to sustain his convictions for aggravated assault and theft by receiving. Lee further contends that the trial court erred in refusing to give his requested jury instruction on accident and in sentencing him as a recidivist. We find no error and affirm.

On appeal from a criminal conviction, the defendant is no longer entitled to a presumption of innocence and we therefore construe the evidence in the light most favorable to the jury's guilty verdict. *Martinez v. State*, 306 Ga. App. 512, 514 (702 SE2d 747) (2010). So viewed, the record shows that late on the evening of March 1, 2008, a minivan was stolen from a residence in Austell, approximately two miles from the address where Lee then resided. The owners of the minivan immediately reported its theft to police.

The following morning, officers with the Douglas County Sheriff's Department were advised to be on the lookout for the stolen vehicle, which was described as a silver Town and Country minivan with a "breast cancer" license plate. Shortly after receiving this advisory, Sergeant Rodney Houston of the Sheriff's Department saw a vehicle matching that description, being driven by Lee, near the intersection of Lee

[6] OCGA § 40-6-390 (a).

2

Road and Highway 92. Sergeant Houston began to follow the minivan and transmitted its license plate number to dispatch. Dispatch responded that the vehicle had been reported as stolen, and the sergeant requested backup. As Sergeant Houston was following the minivan in his marked patrol car, the stolen vehicle suddenly accelerated. The sergeant kept pace with the minivan and, after he was joined by a second patrol car, he activated the lights and siren on his vehicle. Rather than pulling over and stopping the minivan, however, Lee accelerated in an apparent attempt to outrun the police. During this part of the pursuit, the minivan reached speeds of between 70 and 80 mph, in an area where the posted speed limit was 35 mph.

As the pursuit proceeded southbound on Lee Road, the minivan came up behind another vehicle, being driven by Henry Carter. In an attempt to pass Carter's car, Lee pulled the minivan into the middle of the road, driving between Carter's car and oncoming cars in the opposite lane of traffic. Before he could pass Carter's car, Lee saw another vehicle traveling in the northbound lane and headed for a collision with the minivan. Rather than decelerating and pulling in behind Carter's car, Lee steered back into the southbound lane, making contact with Carter's vehicle and forcing it off the road.

The pursuit of Lee then continued, with Sergeant Houston driving at speeds of up to 104 mph simply to maintain sight of the minivan. Lee eventually missed a turn he was attempting to make and ran the minivan up onto a curb, causing significant damage to the vehicle.[7] At that point, Lee abandoned the minivan and ran into a nearby wooded area, ignoring Sergeant Houston's verbal commands to halt. Lee was apprehended a short time later by officers who approached him from the opposite direction.

Henry Carter testified at trial about being forced off the road by Lee, as did his son, who was a passenger in Carter's car at the time of the incident. As Carter explained, the minivan first approached him from behind and rode his bumper, and Lee then pulled the stolen minivan into the middle of the road, driving between Carter's car and two cars traveling in the opposite direction. After seeing a third car headed towards the minivan in the northbound lane, Lee turned the van into Carter's car, made contact with it, and then proceeded to "keep pushing [Carter's car] off the road," eventually forcing it off the road entirely. Carter also stated that when the minivan made contact with his car, he feared both he and his son would be injured.

_____

[7] The owner of the minivan testified that the vehicle "was destroyed."

Carter's son, Royce Davis, testified that he was unaware of the minivan until it made contact with his father's car, but that when the contact occurred and when Lee forced his father's car off the road, Davis was frightened.

A video of the entire police chase, recorded by the camera in Sergeant Houston's patrol car, was introduced into evidence and played for the jury at trial. That video corroborated the testimony of the officers involved in the pursuit of Lee as well as the testimony of Henry Carter and his son.

The State also introduced similar transaction evidence, which showed that on five different prior occasions between November 1995 and August 2006, Lee led law enforcement officers on high speed chases after they attempted a traffic stop of the vehicle Lee was driving. On one of those occasions, Lee was driving a stolen car. Additionally, during each of these five prior incidents, Lee drove at speeds well in excess of the posted speed limit and committed numerous traffic violations in his efforts to avoid police. The evidence showed that on multiple occasions Lee drove in the opposite lane of traffic, forced police cars and civilian vehicles off the road, and deliberately crashed his vehicle into a patrol car. Video of two of these police chases was introduced into evidence and played for the jury.

Based on the foregoing evidence, the jury found Lee guilty. The trial court then held a sentencing hearing to receive evidence regarding, inter alia, the State's request that Lee be sentenced as a recidivist pursuant to OCGA § 17-10-7 (c). At that hearing the State introduced certified copies of Lee's four previous felony convictions, which included one conviction for fleeing from and eluding a police officer and three convictions for possession of cocaine. Based on this evidence, the trial court sentenced Lee as a recidivist.

After the entry of his conviction and sentence, Lee filed a motion for a new trial, which was denied. This appeal followed.

1. "When we consider whether the evidence is sufficient to sustain a conviction, we ask whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation and punctuation omitted.) *Louisyr v. State*, 307 Ga. App. 724, 727-728 (1) (706 SE2d 114) (2011). As we have explained before,

> it is the function of the jury, not this Court, to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the evidence. So, if the record contains some competent evidence to prove each element of the crime[s] of which the defendant was convicted, even

6

though that evidence may be contradicted, we must uphold the conviction.

(Citation and punctuation omitted.) *Ferguson v. State*, 307 Ga. App. 232, 233 (1) (704 SE2d 470) (2010).

(a) Lee argues that the evidence cannot support his conviction for aggravated assault of Henry Carter, because the State proved only that his contact with Carter's car was accidental, and it therefore failed to prove that he intended to injure Mr. Carter. This argument, however, ignores the fact that the State is not required to prove an intent to injure in all aggravated assault cases.

A conviction for aggravated assault requires proof of two essential elements: (1) an assault, as defined in OCGA § 16-5-20, and (2) aggravation by use of a deadly weapon, see OCGA § 16-5-21 (a) (2). The State may prove an assault by showing that the defendant committed an act that placed the victim "in reasonable apprehension of immediately receiving a violent injury." OCGA § 16-5-20 (a) (2). And where the assault element of an aggravated assault charge is predicated on OCGA § 16-5-20 (a) (2), the State is not required to prove that the defendant acted with an intent to injure the victim. *Bishop v. State*, 266 Ga. App. 129, 131 (2) (596 SE2d 674) (2004). Rather, it need only prove that the defendant intended to commit the act which placed the

7

victim "in reasonable apprehension of injury." (Citation omitted.) *Smith v. State*, 280 Ga. 490, 492 (1) (629 SE2d 816) (2006).

Here, Lee does not dispute that, under the circumstances of this case, the stolen minivan constituted a deadly weapon. See *Barnes v. State*, 296 Ga. App. 493, 495 (675 S.E.2d 233) (2009) ("Although an automobile is not a deadly weapon per se, it may become one depending on the manner and means by which it is used.") (footnote omitted); *Kirkland v. State*, 282 Ga. App. 331, 333 (1) (638 SE2d 784) (2006) ("no question exists that an automobile can be a 'deadly weapon'"). Moreover, the evidence at trial, including the testimony of Mr. Carter, established that Lee's conduct in striking Carter's car and forcing it off the road placed Mr. Carter in reasonable apprehension of receiving a serious bodily injury. The evidence also supported the conclusion that the incident with Carter was neither instantaneous nor unavoidable, i.e., that Lee intended to drive into Carter's automobile. Accordingly, the evidence is sufficient to sustain Lee's conviction for aggravated assault of Henry Carter. Id. (victim's testimony that he feared for his life when defendant drove away while victim was hanging onto defendant's car, together with evidence supporting an inference that the defendant intended to drive away with victim in that position, authorized conviction for aggravated assault).

8

(b) Lee next argues that the evidence was insufficient to sustain his conviction for the aggravated assault of Royce Davis, because the State failed to show that his conduct placed Davis in apprehension of receiving an injury. In support of this argument, Lee cites Davis's testimony that he was unaware of the stolen minivan before it struck his father's car. This argument, however, ignores the evidence showing that Lee intentionally steered the minivan into Carter's car, as well as Davis's testimony that when the minivan struck his father's car, Davis was scared. It also ignores the evidence, including the video evidence, showing that Lee did not succeed in forcing Mr. Carter's car off the road until after he struck it with the minivan, i.e., until after Davis was aware of the minivan and its actions. Davis's testimony, together with the other evidence of record, sufficed to show that Davis was in reasonable fear of receiving a bodily injury as a result of Lee's assault with the minivan. See *Williams v. State*, 299 Ga. App. 345, 346-347 (682 SE2d 586) (2009) ("Whether a victim has been placed in reasonable apprehension of injury is a question of fact, which may be established by indirect or circumstantial evidence.") (citation omitted).

(c) Under Georgia law, "[a] person commits the offense of theft by receiving stolen property when he receives, disposes of, or retains stolen property which he knows or should know was stolen unless the property is received, disposed of, or

9

retained with intent to restore it to the owner."[8] OCGA § 16-8-7 (a). On appeal, Lee

argues that the State failed to prove that he knew or should have known the minivan

was stolen. We disagree.

As we have previously recognized, "because of its very nature, [the] crime [of

theft by receiving] is one that is usually proved in whole or in part by circumstantial

evidence." (Citation and punctuation omitted.) Id. Thus, possession of recently stolen

property, together with circumstantial evidence supporting an inference the defendant

knew the property was stolen, will sustain a conviction for this crime. See *Dawson v.*

*State*, 271 Ga. App. 217, 218 (1) (609 SE2d 158) (2005). Here, the evidence showed

that Lee was found in possession of the minivan only 12 hours after it was stolen.

Additionally, Lee fled when police attempted to stop him in the stolen minivan, led

them on a high speed chase, and eventually abandoned the vehicle. The State also

introduced similar transaction evidence showing that on at least one prior occasion

Lee had fled from police while in possession of a stolen vehicle, with his flight

resulting in him abandoning the car. Taken together, this evidence was sufficient to

support an inference that Lee was aware that the minivan was stolen. Id. at 219 (1)

---

[8] For purposes of the statute, "receiving" is defined as "acquiring possession or control or lending on the security of the property." OCGA § 16-8-7 (a).

(evidence that defendant possessed vehicle four days after it was stolen, fled when officers attempted to stop him, and eventually abandoned the vehicle to flee on foot, together with similar transaction evidence, was "sufficient to authorize the jury to infer guilty knowledge"). See also *Reedman v. State*, 265 Ga. App. 162, 164 (1) (a) (593 SE2d 46) (2003) (in theft by receiving case involving a stolen car, "the jury was authorized to infer [defendant's] guilty knowledge from his flight and from the similar transaction evidence adduced") (citation omitted); *Moseley v. State*, 225 Ga. App. 700-701 (1) (484 SE2d 768) (1997) (defendant's possession of the recently stolen pickup truck, fact that defendant fled when seen by officers and that he "abandoned the truck and fled to a nearby house after eluding the pursuing officer in a high-speed chase" supported finding that he knew or should have known the vehicle was stolen) (citations omitted).

2. Lee further contends that the trial court erred in refusing to give his requested jury charge on accident. "We review a trial court's refusal to give a requested jury charge under an abuse of discretion standard." (Footnote omitted). *Turner v. State*, 314 Ga. App. 263-264 (1) (724 SE2d 6) (2012). We find no abuse of discretion here.

Under OCGA § 16-2-2, "[a] person shall not be found guilty of any crime committed by misfortune or accident where it satisfactorily appears there was no

11

criminal scheme or undertaking, intention, or criminal negligence." Accident represents an affirmative defense on which the defendant bears the burden of proof at trial. *Davis v. State*, 269 Ga. 276, 279 (3) (496 SE2d 699) (1998). Accordingly, to be entitled to a jury charge on accident, the defendant must present some evidence from which the jury could find that the defendant "acted without criminal intent and was not engaged in a criminal scheme, and that [his] actions did not show an utter disregard for the safety of others who might reasonably be expected to be injured thereby." (Citations and punctuation omitted.) Id. Lee presented no such evidence here, and therefore failed to raise the affirmative defense of accident. See id.; *Parks v. State*, 304 Ga. App. 175, 179 (3) (a) (695 SE2d 704) (2010).

Moreover, all of the evidence presented at trial showed that at the time he committed the crimes at issue, Lee was engaged in a criminal scheme to elude the police. And his actions showed an utter disregard for the safety of both law enforcement and the driving public, all of whom Lee should have reasonably anticipated might be injured by his conduct. "Consequently, the trial court did not err in refusing to give [Lee's] requested charge on accident." (Citation omitted.) Id. See also *Davis*, supra at 280 (3) (holding that a jury instruction on the defense of accident is not warranted where a person deliberately uses a deadly weapon "to place someone

12

in reasonable apprehension of immediate bodily injury," even where the resulting injury to the victim was not intended) (citations omitted).

3. Lee contends that the trial court erred in sentencing him as a recidivist under OCGA § 17-10-7 (c) because the State's evidence showed only that he had been convicted of two felonies. This assertion is meritless.

OCGA § 17-10-7 (c) provides, in relevant part:

> any person who, after having been convicted under the laws of this state for three felonies . . . , commits a felony within this state shall, upon conviction for such fourth offense or for subsequent offenses, serve the maximum time provided in the sentence of the judge based upon such conviction and shall not be eligible for parole until the maximum sentence has been served.

In connection with the similar transaction evidence it offered at trial, the State also introduced into evidence certified copies of two of Lee's prior convictions, only one of which was a felony conviction. At the sentencing hearing held after Lee was convicted, however, the State introduced certified copies of four prior felony convictions of Lee, which included one prior felony conviction for fleeing from and

13

eluding a police officer, and three prior felony convictions for possession of cocaine.[9]

This evidence established that the trial court was required to sentence Lee as a recidivist. See, e.g., *Becoats v. State*, 318 Ga. App. 262, 264-265 (2) (733 SE2d 795) (2012).

For the reasons set forth above, we affirm the trial court's denial of Lee's motion for a new trial.

*Judgment affirmed. Miller, P. J., and Ray, J., concur.*

---

[9] Lee was convicted for felony attempt to elude a police officer on November 16, 2004, in Cobb County for an incident that occurred on June 4, 2004. Lee's convictions for possession of cocaine were entered in Cobb County on July 18, 1996, in Douglas County on August 12, 2002, and in Fayette County on August 16, 2002. These convictions resulted from incidents occurring on November 25, 1995, December 6, 2001, and December 7, 2001, respectively.