**FOURTH DIVISION**
**ELLINGTON, P. J.,**
**BRANCH and MERCIER, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**November 10, 2016**

# In the Court of Appeals of Georgia

A16A1094. BROWN v. THE STATE.

BRANCH, Judge.

Following a jury trial, Telly Lafonz Brown was convicted in Butts County Superior Court on multiple charges, including two counts of aggravated battery, two counts of aggravated assault, and two counts of leaving the scene of an accident involving serious injury. Brown now appeals from the denial of his motion for a new trial, arguing that the trial court erred in failing to instruct the jury on his sole defense of accident; in failing to instruct the jury on the intent element of aggravated assault and in failing to give an instruction on simple assault, as an element of aggravated assault; and in failing to merge, for sentencing purposes, the two counts of leaving the scene of an accident involving serious injury. For reasons explained more fully below, we find no error in the trial court's jury instructions, and we therefore affirm

the denial of Brown's motion for a new trial. We further find, however, that the trial court erred in failing to merge the two counts of fleeing the scene of an accident involving serious injury. We therefore vacate the trial court's sentencing order and remand the case for resentencing on those counts.

"On appeal from a criminal conviction, the defendant is no longer entitled to a presumption of innocence and we therefore construe the evidence in the light most favorable to the jury's guilty verdict." *Marriott v. State*, 320 Ga. App. 58 (739 SE2d 68) (2013) (citation omitted). So viewed, the record shows that Brown and B. B. dated for approximately one year. Although B. B. attempted to end the relationship after approximately six months, her efforts were unsuccessful, with Brown refusing to accept the breakup, phoning and texting B. B. repeatedly, and appearing at her house uninvited. Eventually, in November 2011, B. B. managed to end her relationship with Brown. Approximately two weeks later, B. B. was visiting her cousin, at the cousin's apartment. The two women heard what sounded like a hissing noise coming from outside, and when they looked through the window, they both saw Brown letting the air out of the tires on B. B.'s car. One week after that incident, B. B. and her cousin went to a local nightclub. Brown was present at the club and, fearing that he would attempt to speak with her, B. B. left and went to her car to wait

for her cousin. As she sat in the parking lot, Brown approached B. B., and she spoke with him briefly through the window, telling him she would not take him back. A short time later, B. B. and her cousin left the parking lot and Brown watched as they drove in the direction of the cousin's apartment. The two women stopped at an all-night restaurant to eat before proceeding to the cousin's apartment, where B. B. planned to spend the night. At some point after the women left the nightclub but before they reached the cousin's apartment, Brown called B. B.'s cell phone. In response to B. B.'s question, Brown told her he was at her home. According to B. B., however, the background noise on the call indicated that Brown was traveling in a car.

As B. B. and her cousin drove into the parking lot at the cousin's apartment, B. B. saw what she believed to be a car belonging to Brown's mother. B. B. called Brown's mother to ask if her son had her car, and the mother confirmed that Brown was driving her car and urged B. B. to "get away," as Brown was planning to kill her. With her cousin driving B. B.'s car, the women exited the parking lot and Brown followed their vehicle. Brown bumped B. B.'s car from behind at least twice, causing the car to "shake and slide," and frightening both women. When the cousin slowed the car to make a left turn (in an attempt to get to a police station), Brown again

3

struck B. B.'s car, causing the cousin to lose control of the vehicle. The force of the impact sent B. B.'s car through a chain-link fence and into the yard of a local trucking company where it collided with the flat bed trailer of an 18-wheeler. Fearing that Brown would return to the scene, B. B. and her cousin crawled from the wrecked car and hid underneath the trailer to wait for police. B. B. suffered a broken wrist in the accident and her cousin suffered a broken leg that had to be repaired surgically.

At trial, the State introduced portions of several 911 calls that were received by local law enforcement on the night in question. Those recordings showed that Brown's mother called 911 to report that Brown had stolen her car and planned to use it to "run his girlfriend over" and to "hit [her] in the car." Sometime later, Brown's father called to request police assistance, telling the 911 operator, "it's my son, he got the car and mad at his girlfriend, like he want to hurt [himself] or somebody. . . . He done snapped." After the call was suddenly disconnected, the 911 operator called the Brown home, and at that time Brown's mother reported that Brown had returned home, and informed his parents that he had wrecked the car when he ran "the girl off the road somewhere." Brown's mother also told the 911 operator that her son had left home again and that he had threatened to kill his girlfriend.

4

The morning after the accident, police interviewed Brown twice, first at his parents' home and then at the police station. During those interviews, Brown admitted that although he did not have a valid driver's license, he was driving his mother's car when it collided with B. B.'s car. According to Brown, he had been following B. B. and her cousin and their car braked suddenly. Although Brown tried to stop, his brakes failed, causing him to hit the back of B. B.'s car. Following the interview at the police station, the officer told Brown that he would be booked on several charges resulting from the accident. As police began the booking process, Brown fled the police station. Police captured him a short time later in a nearby wooded area.

Brown was subsequently indicted on two counts of aggravated battery, two counts of aggravated assault, two counts of aggressive driving, two counts of leaving the scene of an accident involving serious injury, one count of leaving the scene of an accident resulting in damage to a vehicle, one count of driving with a suspended license, one count of obstruction of an officer, and one count of escape. The jury found Brown guilty on all counts, and the trial court entered a judgment of conviction on the jury's verdict and sentenced Brown to 45 years in incarceration. The trial court merged the two counts of aggressive driving with the counts of aggravated assault for sentencing purposes, but sentenced Brown to five years on each of the counts of

leaving the scene of an accident involving serious injury, with those sentences to be served concurrently. Brown filed a motion for a new trial, which the trial court denied in a summary order without holding a hearing.[1] Brown now appeals from that order.

1. Brown contends that the trial court erred in failing to instruct the jury on the affirmative defense of accident. While Brown acknowledges that he did not request such an instruction, he relies on the fact that accident represented his sole defense and points to the law holding that a trial court's failure to charge the jury on a defendant's sole defense, even in the absence of a request for such a charge, may constitute reversible error if at least some evidence supports such a charge. See *Parks v. State*, 281 Ga. App. 679, 682 (4) (637 SE2d 46) (2006). "Whether the evidence presented is sufficient to authorize a charge on accident . . . is a question of law." *Kellam v. State*, 298 Ga. 520, 521 (2) (783 SE2d 117) (2016) (citation omitted). We find no error, as the evidence in this case did not authorize a charge on accident.

Under OCGA §16-2-2, "[a] person shall not be found guilty of any crime committed by misfortune or accident where it satisfactorily appears there was no criminal scheme or undertaking, intention, or criminal negligence."

---

[1] In its order denying the new trial motion, the court stated that Brown's motion was not based "on any ground that would require an evidentiary hearing."

Accident represents an affirmative defense on which the defendant bears the burden of proof at trial. Accordingly, to be entitled to a jury charge on accident, the defendant must present some evidence from which the jury could find that the defendant acted without criminal intent and was not engaged in a criminal scheme and that his actions did not show an utter disregard for the safety of others who might reasonably be expected to be injured thereby.

*Lee v. State*, 320 Ga. App. 573, 578 (2) (740 SE2d 307) (2013) (citations and punctuation omitted). Here, the unrefuted evidence shows that Brown stole his mother's car and told his family he intended to use the automobile to kill B. B.; he waited in the parking lot of the cousin's apartment for B. B. and her cousin to arrive; Brown followed B. B.'s car when the women attempted to avoid him by driving away from the apartment; Brown pursued the women for some distance, using his mother's car to "bump" B. B.'s vehicle at least twice; Brown continued to follow B. B.'s car at close range despite having struck her vehicle at least twice; after the collision, Brown fled the scene; Brown was able to drive his mother's car back to her house, despite his statement to police that his brakes had failed at the time of the collision; and Brown reported to his parents that he had "[run] his girlfriend off the road." The unrefuted evidence, therefore, showed that even assuming some type of mechanical malfunction occurred, the collision was not the result of an accident, within the

meaning of OCGA §16-2-2. In other words, assuming that some kind of brake failure contributed to the collision, that failure occurred as Brown was engaged in a criminal scheme to stalk, terrorize, injure, and/or kill B. B. See *Brockman v. State*, 292 Ga. 707, 729 (15) (739 SE2d 332) (2013) (defendant's testimony that gun accidentally discharged after he had abandoned his attempt to rob a gas station and was attempting to flee the scene did not support the defendant's requested charge on accident; the defendant's testimony showed that his "criminal scheme [to rob] was ongoing when" the gun discharged and struck the victim) (punctuation omitted). Accordingly, the trial court did not err in failing to give, sua sponte, a charge on the defense of accident. Id. See also *Lee*, 320 Ga. App. at 579 (2) (defendant not entitled to a charge on accident where automobile collision occurred while defendant was driving recklessly in an effort to elude police).

2. Brown argues that the trial court erred in at least two respects in instructing the jury on aggravated assault. Because Brown offered no objection to the jury charge, we review these claims for "plain error." *Holloman v. State*, 293 Ga. 151, 152 (2) (744 SE2d 59) (2013). To demonstrate plain error, a defendant must show that the jury instruction was erroneous, that the error in the instruction was obvious, that the instruction likely affected the outcome of the trial, and that "the error seriously

8

affected the fairness, integrity[,] or public reputation of [the] judicial proceeding[ ]." Id. (citation omitted). We find no such error in this case.

(a) Brown contends that the trial court erred in failing to instruct the jury that to prove aggravated assault, the State was required to prove that Brown intended to injure the victims. This claim is without merit.

Under Georgia law, an aggravated assault can be committed in four different ways: by committing the assault with the intent to murder, rape, or rob the victim; by committing the assault "with a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury;" by committing the assault "[w]ith any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in strangulation;" or by discharging "a firearm from within a motor vehicle toward a person or persons" without legal justification. OCGA § 16-5-21 (b) (1), (2), (3), (4). In this case, the indictment charged Brown with committing aggravated assault against both B. B. and her cousin by use of an automobile, "an object which[,] when used offensively against another person[,] is likely to result in serious bodily injury." In such cases, where the State alleges that a defendant committed aggravated assault by use of a deadly weapon, the prosecution is not

9

required to prove that the defendant intended to injure the victim. See *Ganaway v. State*, 282 Ga. 297, 299 (2) (647 SE2d 590) (2007) ("intent to injure is not an element of the . . . offense" of assault with a deadly weapon). Thus, where that form of aggravated assault is charged, the State is only required to prove that the defendant intended to commit the act that either put the victim in reasonable apprehension of receiving an injury or that actually resulted in the victim being injured. Id. See also *Smith v. State*, 280 Ga. 490, 492 (1) (629 SE2d 816) (2006). Cf. *Sullivan v. Kemp*, 293 Ga. 770, 772-773 (1) (749 SE2d 721) (2013) (reversing defendant's conviction based on the trial court's failure to instruct the jury that to convict the defendant of aggravated assault, the State was required to prove that the defendant intended to commit the charged act; the failure to charge on intent made it possible for the jury to convict the defendant of aggravated assault even if it found the defendant's conduct was criminally negligent, rather than intentional).

Here, the trial court properly instructed the jury on the issue of intent, charging the jurors that "a person commits the offense of aggravated assault when he . . . assaults with a deadly weapon, or with any object, device or instrument, which when used offensively against a person is likely to, or actually does result in serious bodily injury"; "that although an automobile is not a deadly weapon per se, it may become

one depending on the manner in which it is used [and] [t]he question of whether an automobile has been used in such a manner . . . is for . . . the jury to decide"; that "intent is an essential element of any crime and must be proven by the State . . . beyond a reasonable doubt"; and that "criminal intent does not mean an intention to violate the law or to violate a penal statute. But simply the intention to commit the act that is prohibited by the statute." Accordingly, we find no error, plain or otherwise, in the court's instruction as to the intent element of aggravated assault in this case.

(b) Brown further contends that the trial court erred in failing to define simple assault as an element of aggravated assault. A simple assault occurs where an individual "[a]ttempts to commit a violent injury to the person of another" or "[c]ommits an act which places another in reasonable apprehension of immediately receiving a violent injury." OCGA § 16-5-20 (a). To convict a defendant of aggravated assault, the State must prove both that the defendant committed a simple assault and that he did so with one of the aggravating factors set forth in OCGA § 16-5-21 (b). See *Lee*, 320 Ga. App. at 576 (1) (a).

Although simple assault is an element of aggravated assault, a charge on simple assault is not always required "to complete the definition of aggravated assault. The latter does not [necessarily] need the former to make it complete." *Sutton v. State*, 245

11

Ga. 192 (2) (264 SE2d 184) (1980) (citations omitted). A charge on simple assault is not necessary if, under the facts charged and the proof presented, the jury could not convict the defendant of aggravated assault without implicitly finding that a simple assault had occurred. See *Cantera v. State*, 289 Ga. 583, 585-586 (2) (713 SE2d 826) (2011); *Taylor v. State*, 327 Ga. App. 288, 291 (4) (758 SE2d 629) (2014). Thus, for example, a charge on simple assault is not always required where a defendant's conduct has resulted in the victim's injury. As our Supreme Court explained in *Cantera*, "there is a distinction between aggravated assault cases with injuries that have been intentionally inflicted based upon the evidence and those where, although there may be injuries, intent may be a question." 289 Ga. at 586 (2). Where the evidence shows that the charged act injured the victim and the jury is "properly instructed on general intent" (i.e., that the State is required to prove that the defendant intended to commit the charged act), "there is no need for the trial court to instruct the jury on simple assault in connection with its charge on aggravated assault." Id. Under those circumstances, if the jury concludes that the defendant committed the acts in question and that he did so with the requisite criminal intent, there can be no doubt but that a simple assault occurred. See *Holloman*, 293 Ga. at 152 (2) (no charge on simple assault was necessary where the child suffered injuries that resulted in his

12

death and the evidence showed that such injuries could not have been inflicted unintentionally, negligently, or recklessly); *Cantera*, 289 Ga. at 585 (2) (no charge on simple assault was required where the defendant shot and killed the victim and evidence showed that the defendant acted intentionally).

Conversely, an instruction on simple assault is required in those cases where a defendant is charged with aggravated assault even though the victim was not injured. In such cases,

> a jury would have to be informed that the perpetrator could still be found guilty of aggravated assault despite the fact that he or she did not cause any physical injury to the victim. [A charge on simple assault] would be required under such circumstances because the jury would need to know that the perpetrator could be found guilty of aggravated assault for having attempted to commit a violent injury to the person of another, or for having committed an act which placed another in reasonable apprehension of immediately receiving a violent injury through the use of a deadly weapon.

*Cantera*, 289 Ga. at 585 (2) (citation and punctuation omitted).

Here, the unrefuted evidence showed that Brown's conduct resulted in serious bodily injury to both B. B. and Pearson. Thus, given that the jury found that Brown intended to strike B. B.'s car, no question existed as to whether a simple assault had

13

occurred. Under these circumstances, therefore, the trial court did not err in failing to instruct the jury on simple assault as an element of aggravated assault.[2] See *Cantera*, 289 Ga. at 586 (2) (where the jury has been properly instructed on general intent and there is no question as to whether the defendant's alleged conduct would constitute an assault, "there is no need for the trial court to instruct the jury on simple assault in connection with its charge on aggravated assault"); *Taylor*, 327 Ga. Ap. at 291 (4) (same).

3. Brown was convicted on two counts of leaving the scene of an accident involving serious injuries, and the trial court sentenced him on both counts, with the sentences to be served concurrently. Brown argues that the trial court erred in failing to merge these two counts for sentencing purposes. We agree.

Georgia's "hit-and-run statute," OCGA § 40-6-270, imposes certain duties on drivers who are involved in an automobile accident resulting in injury to a person or

---

[2] In his appellate brief, Brown also appears to argue that because the trial court failed to give an instruction on simple assault, the charge as a whole allowed the jury to convict him of aggravated assault based on conduct that was criminally negligent, rather than intentional. Given that the jury was instructed that it had to find that Brown intended to commit the act which caused the victims' injuries, this argument is without merit. Put another way, the charge prevented the jury from convicting Brown of aggravated assault unless it found that Brown intentionally struck B. B.'s car, thereby propelling it through the fence and into the bed of the trailer.

14

damage to a vehicle.[3] OCGA § 40-6-270 (a). Any person who knowingly fails to stop and comply with these requirements with respect to an accident that "is the proximate cause of death or a serious injury" is guilty of a felony, which "shall be punished by imprisonment for not less than one nor more than five years." OCGA § 40-6-270 (b). Brown contends that because this statute criminalizes fleeing the scene of an accident, an individual can only violate the statute once with respect to each accident scene which he flees. The State, on the other hand, contends that Brown could be charged with two counts of violating OCGA § 40-6-270 (b) because the accident at issue involved two victims. We agree with Brown.

In deciding whether the State may charge multiple violations of OCGA § 40-6-270 based on the fact that a single accident involved multiple victims, we begin with the plain language of the statute. See *May v. State*, 295 Ga. 388, 391 (761 SE2d 38) (2014) (in determining the scope of a particular statutory provision, we begin "with the words of that provision"; we "presume that the General Assembly meant what it

_____

[3] Specifically, the statute requires the driver to stop at the scene; give his or her name and address and the registration number of his or her vehicle; provide his driver's license "to the person struck or the driver or occupant of or person attending any vehicle collided with"; render reasonable assistance to any person injured in the accident; and if the person injured is unconscious, to "make every reasonable effort to ensure that emergency medical services and local law enforcement are contacted." OCGA § 40-6-270 (a) (1) - (4).

said and said what it meant"; and "we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would") (citations and punctuation omitted). The hit-and-run statute requires an individual to stop at the scene of "*an accident* resulting in injury to or the death of any person or in damage to a vehicle . . . attended by any person." (Emphasis supplied.) Thus, the hit-and-run statute punishes an individual's failure to stop at the scene of an automobile accident in which that person was involved. A violation of the statute occurs whenever someone fails to stop, regardless of whether that person is at fault with respect to the accident and regardless of the number of victims involved. Notably, the hit-and-run statute does not punish either the defendant's conduct in causing the accident or in causing the victim's injuries.

Given that the hit-and-run statute criminalizes the act of failing to stop at the scene of an accident, and given that there can be only one failure to stop at any single accident, a defendant may only be charged with a single violation of the hit-and-run statute for any single accident, regardless of the number of victims.[4] In short, the duty

---

[4] If a defendant is involved in more than hit one hit-and-run accident, he can be charged with violation of the statute with respect to each accident. See, e. g., *Sevostiyanova v. State*, 313 Ga. App. 729, 731 (1) (722 SE2d 333) (2012) (affirming defendant's two convictions for fleeing the scene of an accident involving an unattended vehicle, in violation of OCGA § 40-6-271, where the evidence showed that defendant hit two different cars in a parking lot and then fled the scene).

16

imposed by the statute is a collective one – i.e., if the accident involves multiple victims, the duty to stop is owed to the victims collectively. Where a statute imposes such a collective duty, either towards a defined group of individuals or "collectively to the general public," a violation of that statute "results in but a single offense." *Balkom v. Defore*, 219 Ga. 641, 643 (3) (135 SE2d 425) (1964) (citation omitted). Under such circumstances, because only one violation of the statute has occurred, a defendant may not be convicted of multiple counts merely because the facts show his single act affected more than one person. Id. (holding that although the defendant had five children, he could only be convicted of one count of abandonment as "the duty to support and provide necessaries for minor children, residing in and members of the same household, is owed to the children collectively"). See also *Lidy v. State*, 335 Ga. App. 517, 520-521 (2) (782 SE2d 302) (2016) (trial court erred in failing to merge a defendant's conviction on two separate counts of felony obstruction of a police officer; although the defendant's act of resisting arrest affected two officers, both officers were affected simultaneously and the State relied on "identical facts and identical allegations . . . to establish the commission of the crime against each officer"); *Harris v. State*, 165 Ga. App. 249, 252 (5) (299 SE2d 924) (1983) (defendant could be convicted on only one count of impersonating a police officer;

even though he misrepresented himself to two persons, only one act of impersonation occurred, as the two people were together).

In reaching this conclusion, we emphasize that a defendant's conduct in causing an accident or injuring accident victims is punishable under statutes that were designed to address conduct other than the failure to stop at an accident scene. And a defendant may be charged separately with respect to the injuries inflicted on each victim of a single accident – i.e., a defendant may be indicted (as Brown was) on multiple charges of aggravated battery, aggravated assault, or even vehicular homicide. See *Green v. State*, 265 Ga. App. 126, 129 (2) (592 SE2d 901) (2004) (applying the general rule that where criminal act has more than one victim, a defendant may be charged separately with respect to each victim). See also *Balkom*, 219 Ga. at 643 (3) (noting that with respect to crimes against the person, a defendant's single act may give rise to multiple charges, as that conduct violates "a separate duty [the defendant owed] to each member of society whose interest the [defendant's] act infringed").

For the reasons set forth above, we affirm the trial court's denial of Brown's motion for new trial. We vacate Brown's sentences on the two counts of leaving the

18

scene of an accident involving serious injury and remand to the trial court for entry of a new sentence with respect to these counts.

*Judgment affirmed in part and vacated in part, and case remanded with direction. Ellington, P. J., and Mercier, J., concur.*