**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and PINSON, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**January 14, 2022**

# In the Court of Appeals of Georgia

A21A1580. SHINE v. THE STATE.

DILLARD, Presiding Judge.

Following trial, a jury convicted Dejonquavius Shine on charges of theft by taking, felony fleeing or attempting to elude a police officer, theft by receiving, and misdemeanor obstruction of an officer. On appeal, Shine contends that the evidence was insufficient to support his three felony convictions. Nevertheless, for the reasons set forth *infra,* we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the record shows that in 2014, Yuri Rusev and his wife, Nataliya, who resided in Douglasville, owned a 2006 S500 black Mercedes, which they decided to sell and then listed on Craigslist and Autotrader for $19,500. A few weeks later, Yuri received a text message from a

---

[1] *See, e.g.*, *Libri v. State*, 346 Ga. App. 420, 421 (816 SE2d 417) (2018).

person with a Columbus, Georgia mobile number, who expressed interest in purchasing the vehicle. On May 2, 2014, the same prospective buyer again texted Yuri and asked if he could see the car that afternoon. Although Yuri was going to be at work, he agreed and told Nataliya that the prospective buyer was on the way.

Later that afternoon, a new, burgundy Dodge Charger parked on the street near the Rusevs' house. And alerted by a text from Yuri that the prospective buyer had arrived, Nataliya went outside, saw the Charger, and could tell that it had several occupants. As Nataliya approached, a man later identified as Shine, wearing dark colored jeans, a dark colored shirt, and a hat with "New Orleans" written on it, approached her. The two talked about the Mercedes for several minutes, at which point Shine asked Nataliya if he could take it for a test drive. She agreed, handed him the keys, but told him she needed to lock her house first. But shortly after turning to walk toward her front door, Nataliya heard tires squealing and turned back to see both the Mercedes and Charger speeding away. Immediately, she called 911 to report the theft.

Meanwhile, the two vehicles—with Shine driving the Mercedes and his accomplices, Trequarious Hester, Javari Roberson, and two juveniles (A. H. and B. M.) in the Charger—left the Rusevs' neighborhood and turned on to Chapel Hill

2

Road, a busy state highway. Within minutes, a Douglasville police officer—who received a dispatch regarding the stolen vehicle and was already patrolling in the area—spotted both the Mercedes and Charger traveling in the opposite direction. Because traffic was heavy, the officer could not turn around quickly. And as he attempted to do so, he saw both vehicles accelerate and swerve into oncoming traffic, obviously attempting to flee. But even after turning around, the officer could not keep pace with the suspects due to the traffic and his unwillingness to drive on the wrong side of the road. Then, the officer heard on radio dispatch that both vehicles were spotted heading westbound on Interstate 20, and so he proceeded in that direction.

Meanwhile, two other Douglasville police officers spotted the fleeing vehicles entering I-20 and began pursuing them. After a few minutes, the Mercedes exited the interstate at Highway 5, but the Charger continued fleeing on I-20, and the two officers continued pursuing the latter. Moments later, one of the officers initiated a Precision Immobilization Technique ("PIT") maneuver, causing the Charger to crash into a guardrail. All four of the Charger's occupants then exited the vehicle, but officers immediately tased Roberson and arrested him. Hester and the two juveniles fled into some nearby woods, but not before an officer fired at A. H., who was armed, and wounded him. Not long after, Hester, A. H., and B. M. were apprehended in a

3

neighborhood on the other side of the woods when their attempt to ask a resident if they could use a phone to call for a ride, instead resulted in the resident calling the police. Additionally, upon searching the Charger and examining its VIN number, officers determined the vehicle had been stolen from a Columbus dealership in a car-jacking five days earlier.

As the pursuit of the Charger was concluding, officers received a radio dispatch indicating that the Mercedes had been found abandoned in a Walmart parking lot located on Highway 5. Surveillance footage from the Walmart showed that a man with a hat exited the vehicle and fled into some nearby woods. Subsequently, officers began searching the area with the assistance of a K-9 unit. The search continued for several hours, and around 7:30 p.m., a detective with the Douglasville Police Department noticed a man matching Shine's description walking in the opposite direction on the side of the road near the Walmart. The detective turned his vehicle around and approached the man as he walked through the parking lot of a fast-food restaurant. But when he lowered his window and asked if he could speak with him, the man ran in to one side of the restaurant and exited the other. By that time, several other officers arrived in the area, and, thus, moments after the man—who was in fact

Shine—exited the restaurant, a K-9 officer who spotted him released his dog, resulting in Shine's arrest.

The State charged Shine, via indictment, with one count each of theft by taking, fleeing or attempting to elude a police officer, theft by receiving, and misdemeanor obstruction of an officer. The case then proceeded to trial, during which the State presented the aforementioned evidence, including the fact that Nataliya identified Shine in a photographic lineup as the man who stole the Mercedes. The State also presented evidence linking the text messages sent to Yuri, inquiring about the Mercedes, to a pre-paid disposable cell phone in Shine's possession at the time of his arrest. Additionally, the State presented evidence that Shine had previously been convicted of theft by receiving of an automobile after leading police on a high-speed chase. Finally, both Hester and B. M. testified for the State and claimed it was Shine's plot to steal a car and split the proceeds with all of them. Both also testified that Shine drove the Charger from a house in Macon, where they all met, to Douglasville, and that after Shine got in the Mercedes, Hester drove the Charger. Hester further testified that Shine had been driving the Charger for several days before the trip to Douglasville.

After the State rested, Roberson—who had already pleaded guilty to several offenses arising out of the theft—testified for the defense and claimed that Shine was not involved in the plot to steal the Mercedes. Rather, Roberson testified that Torrell Pedroso—a local gang-leader who went by "TQ"—was the person who drove to Douglasville and stole the Mercedes. But on cross-examination, Roberson admitted that during his plea hearing, he implicated Shine. Next, Shine testified in his own defense and also claimed that he was not involved in stealing the Mercedes, explaining that he was arrested in Douglasville only because he had driven there after TQ and Roberson called him pleading for a ride. Nonetheless, at the conclusion of the trial, the jury found Shine guilty on all charges. Shine then filed a motion for new trial, which the trial court denied after conducting a hearing on the matter. This appeal follows.

In his sole enumeration of error, Shine challenges the sufficiency of the evidence identifying him as the perpetrator of the offenses. We disagree.

When a criminal conviction is appealed, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption

of innocence.[2] And, of course, in evaluating the sufficiency of the evidence, we "do not weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt."[3] The jury's verdict will be upheld, then, so long as there is "some competent evidence, even though contradicted, to support each fact necessary to make out the State's case."[4] Bearing these guiding principles in mind, we turn to Shine's specific challenges to the sufficiency of the evidence.

1. *Theft by taking*. OCGA § 16-8-2 provides that "[a] person commits the offense of theft by taking when he unlawfully takes or, being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated." And under OCGA § 16-8-1 (3), "property of another" includes

---

[2] *See English v. State*, 301 Ga. App. 842, 842 (689 SE2d 130) (2010) (noting that following conviction, an appellant no longer enjoys a presumption of innocence).

[3] *Jones v. State*, 318 Ga. App. 26, 29 (1) (733 SE2d 72) (2012) (punctuation omitted); *see Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979) (noting that the relevant question is, after viewing the evidence in the light most favorable to the prosecution, could any rational jury found the essential elements of the crime beyond a reasonable doubt).

[4] *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001) (punctuation omitted).

7

"property in which any person other than the accused has an interest but does not include property belonging to the spouse of an accused or to them jointly."

In this matter, the indictment charged Shine with theft by taking in that he "did unlawfully take a 2006 Mercedes S500, the property of Nataliya Rusev, with a value greater than five thousand dollars ($5,000.00) or more, with the intent to deprive said owner of said property. . . ." Additionally, as discussed *supra*, the State presented evidence that Shine contacted Yuri ostensibly about buying his Mercedes but then took the vehicle from Nataliya without her permission before leading police officers on a high-speed chase. And importantly, Nataliya identified Shine in a photo lineup as the person who took the Mercedes, and police officers arrested Shine close to where the vehicle was abandoned. Given these circumstances, the evidence was sufficient to support Shine's conviction on the theft-by-taking charge.[5]

[5] *See Jones v. State*, 303 Ga. 496, 499 (II) (813 SE2d 360) (2018) (holding that evidence identifying defendant as driving away from the scene of shooting in victim's girlfriend's vehicle without her permission and despite her attempts to stop him was sufficient to support defendant's conviction on theft-by-taking charge); *Hammock v. State*, 311 Ga. App. 344, 344-45 (1) (715 SE2d 709) (2011) (concluding that evidence defendant broke into line at convenience-store checkout, in front of victim, and left store; that victim exited store a short time later to find her car missing; and that witnesses then viewed store's surveillance videotape and identified defendant as the person who entered the car and drove away with it was sufficient to support defendant's conviction on theft-by-taking charge); *Ferguson v. State*, 307 Ga. App. 232, 233-34 (1) (704 SE2d 470) (2010) (holding that evidence in video surveillance

2. *Fleeing or attempting to elude a police officer.* OCGA § 40-6-395 (a)

provides:

> It shall be unlawful for any driver of a vehicle willfully to fail or refuse
> to bring his or her vehicle to a stop or otherwise to flee or attempt to
> elude a pursuing police vehicle or police officer when given a visual or
> an audible signal to bring the vehicle to a stop. The signal given by the
> police officer may be by hand, voice, emergency light, or siren. The
> officer giving such signal shall be in uniform prominently displaying his
> or her badge of office, and his or her vehicle shall be appropriately
> marked showing it to be an official police vehicle.

And under OCGA § 40-6-395 (b) (5) (A),

> [a]ny person violating the provisions of subsection (a) of this Code
> section who, while fleeing or attempting to elude a pursuing police
> vehicle or police officer . . . [f]lees in traffic conditions which place the
> general public at risk of receiving serious injuries . . . shall be guilty of
> a felony punishable by a fine of $5,000.00 or imprisonment for not less
> than one year nor more than five years or both.

---

footage showing person taking victim's car was sufficient to support identification
of defendant as thief and, thus, his conviction for theft by taking motor vehicle);
*Campbell v. State*, 275 Ga. App. 8, 9-10 (1) (619 SE2d 720) (2005) (holding that
evidence showing a man matching defendant's description driving victim's car out
of the parking lot was sufficient to support conviction on theft-by-taking charge).

Here, Count 2 of the indictment charged Shine with the felony level of fleeing or attempting to elude a police officer, specifically alleging that he "being the driver of the vehicle, did willfully fail to bring his vehicle to a stop while fleeing and attempting to elude a pursuing police vehicle, while fleeing in heavy traffic conditions, which placed the general public at risk of receiving serious injuries . . . after having been given an audible and visual signal to bring his vehicle to a stop" by a uniformed police officer in a prominently marked police vehicle. And the evidence at trial showed that Shine fled from several police officers, despite at least one of the officers illuminating his blue lights, driving at high speeds through heavy traffic on a crowded state highway and interstate. In fact, at one point, the evidence showed that Shine drove on the wrong side of the road into oncoming traffic in order to elude one of the officers who pursued him. Additionally, the State introduced a video recording of the chase from one of the pursuing officer's dashboard camera and played it for the jury. Accordingly, the evidence was sufficient to support the jury's guilty verdict and, therefore, Shine's conviction on the charge of felony fleeing or attempting to elude a police officer.[6]

---

[6] *See Alexander v. State*, 355 Ga. App. 234, 235-37 (1) (843 SE2d 907) (2020) (holding that evidence defendant ignored officer's signals to stop, drove 70 miles per hour in 30 mile per hour zone, ignored stop signs, passed at least one car, and

3. *Theft by receiving.* Under OCGA § 16-8-7 (a), "[a] person commits the offense of theft by receiving stolen property when he receives, disposes of, or retains stolen property which he knows or should know was stolen unless the property is received, disposed of, or retained with intent to restore it to the owner." Importantly, knowledge that the received goods were stolen is "an essential element of the offense of receiving stolen property."[7] And because of its very nature, the crime of theft by receiving is "one that is usually proved in whole or in part by circumstantial evidence."[8] Consequently, possession of recently stolen property, "together with

---

eventually landed in a ravine was sufficient to support conviction on charge of felony fleeing or attempting to elude a police officer); *Hinton v. State*, 297 Ga. App. 565, 566 (1) (b) (677 SE2d 752) (2009) (affirming felony fleeing conviction when evidence showed that defendant "reached speeds in excess of 100 mph in a residential area" and "ran a stop sign and then jumped from the car while it was still in motion" before "the car struck a police cruiser, rolled across the roadway, and ran into a fence").

[7] *White v. State*, 283 Ga. 566, 568 (2) (662 SE2d 131) (2008) (punctuation omitted); *see Gillis v. State*, 315 Ga. App. 803, 805 (728 SE2d 324) (2012) ("Knowledge that goods are stolen is an essential element of the crime of receiving stolen goods, and this knowledge on the part of the accused must be proved; but it may be inferred from circumstances, [when] the circumstances would excite suspicion in the minds of ordinarily prudent persons." (punctuation omitted)).

[8] *Lee v. State*, 320 Ga. App. 573, 577 (1) (c) (740 SE2d 307) (2013) (punctuation omitted); *accord Miller v. State*, 351 Ga. App. 757, 765 (1) (c) (833 SE2d 142) (2019).

11

circumstantial evidence supporting an inference the defendant knew the property was stolen, will sustain a conviction for this crime."[9]

In this matter, Count 3 of the indictment charged Shine with theft by receiving, alleging that he "did unlawfully retain stolen property, to wit: 2014 Dodge Charger, the property of [the dealership], with a value greater than five thousand dollars ($5,000.00) or more, which he should have known was stolen, and said property not having been retained with the intent to restore it to its rightful owner. . . ." And the State presented undisputed evidence that the Dodge Charger was stolen when an employee of a Columbus automobile dealership was the victim of a car-jacking five days prior to the theft of the Rusevs' Mercedes while the employee was taking a person whom she thought was a customer on a test drive of the vehicle. The evidence also showed that Shine had been driving the vehicle for a few days shortly after it was stolen, including driving it to Douglasville, and, indeed, Nataliya testified that he arrived at her home in the Charger. In addition, the State introduced prior-acts evidence showing Shine had previously been convicted of theft by receiving of an

_____

[9] *Lee*, 320 Ga. App. at 578 (1) (c) (punctuation omitted); *accord Miller*, 351 Ga. App. at 765 (1) (c); *see Thornton v. State*, 292 Ga. 796, 797 (1) (b) (741 SE2d 641) (2013) (holding that knowledge to establish guilt for theft by receiving may be inferred from possession of recently-stolen property coupled with circumstantial evidence that would raise suspicion in ordinarily prudent person).

automobile after leading police on a high-speed chase. Moreover, although there was some evidence Shine was involved in the theft of the Charger,[10] we "need not determine whether the evidence presented supports a finding that the defendant was *not* the principal thief of the stolen property to uphold a jury's guilty verdict as to a theft by receiving charge."[11] Given these particular circumstances, the evidence was sufficient to support an inference that Shine was aware that the Dodge Charger was stolen and, thus, to sustain his conviction of theft by receiving.[12]

---

[10] During the trial, the automobile dealership employee who was car-jacked did not identify her assailant but testified that the purported customer was wearing a hat with "New Orleans" printed on it, which was similar to Nataliya's testimony regarding the hat Shine was wearing when the Mercedes was stolen.

[11] *Pender v. State*, 311 Ga. 98, __ (1) (a) (856 SE2d 302) (2021).

[12] *See Miller*, 351 Ga. App. at 765 (1) (c) (holding that evidence defendant was driving stolen van mere hours after it was stolen, used van to flee from police officers who tried to detain him, and had a previous conviction for leading officers on a high speed chase in a stolen vehicle was sufficient to support defendant's theft-by-receiving conviction); *Lee*, 320 Ga. App. at 577-78 (1) (c) (affirming defendant's theft-by-receiving conviction when evidence showed that defendant was driving stolen vehicle only 12 hours after it was stolen, attempted to flee from police in vehicle, and on a prior occasion had similarly fled police while driving a stolen vehicle); *Dawson v. State*, 271 Ga. App. 217, 218-19 (1) (609 SE2d 158) (2005) (holding that evidence that defendant possessed vehicle four days after it was stolen and fled when officers attempted to stop him, together with similar-transaction evidence, was sufficient to authorize the jury to infer guilty knowledge and support theft-by-receiving conviction).

For all these reasons, we affirm Shine's convictions and the denial of his motion for new trial.

*Judgment affirmed. Mercier and Pinson, JJ., concur*.