FINAL COPY
295 Ga. 421

S14A0558. JOHNSON v. THE STATE.

HUNSTEIN, Justice.

Appellant Donterrius Johnson was convicted of two counts of felony murder and related offenses in connection with the beating deaths of two victims in separate incidents in 2009. Johnson now appeals, challenging the sufficiency of the evidence, the admission of his videotaped police interview, and the propriety of his sentencing, and contending that his trial counsel rendered ineffective assistance. We agree that Johnson was improperly sentenced on the two felonies underlying his felony murder convictions and therefore vacate his sentences on Counts 2 and 5. In all other respects, we affirm.[1]

---

[1] The crimes were committed on August 29 and September 4, 2009. Johnson was indicted by a Lowndes County grand jury in April 2011 for the felony murder, aggravated assault, and robbery by force of Robert Crawford and for the felony murder and armed robbery of Michael McCaskill. Johnson was also indicted for the armed robbery of Willie Miller and for obstruction of a law enforcement officer. Following a jury trial held in August 2011, Johnson was convicted on all counts except that for the armed robbery of Miller, which was nolle prossed, and the obstruction count, on which he was acquitted. Johnson was sentenced to life imprisonment for each of the felony murders and to a 20-year term of imprisonment for each of the other three felonies. Johnson filed a timely motion for new trial on September 30, 2011, which was subsequently amended. Following a hearing held on April 4, 2013, the trial court denied the motion for new trial on September 16, 2013. Johnson filed his notice of appeal on October 14, 2013. His appeal was docketed to

On August 29, 2009, Johnson and accomplice Corey Singleton encountered victim Robert Crawford sitting on the front stoop of the Valdosta boardinghouse in which he resided. Johnson and Singleton approached and began talking to Crawford, and Singleton asked Crawford whether he wanted to buy some crack cocaine. Singleton then hit Crawford in the face and dragged him off the stoop into the front yard. Johnson began hitting and kicking Crawford, while Singleton went through Crawford's pockets, seized his wallet, and went through its contents. Johnson and Singleton then ran away in different directions. Police responding to the scene found Crawford lying face down in the yard, unresponsive, with abrasions on his head and footprints on the back of his shirt. A cell phone holder and other items appearing to have come from a wallet were found close by. Crawford died twelve days later from complications of blunt force head trauma.

On September 4, 2009, Johnson and Singleton met at a bar, outside of which they were approached by victim Michael McCaskill, who wanted to buy crack cocaine. Singleton walked with McCaskill beneath a nearby overpass,

the January 2014 term of this Court and was thereafter submitted for decision on the briefs.

2

while Johnson and several other men waited for a signal from Singleton. Singleton hit McCaskill, knocking him to the ground, and the others rushed to join in. Johnson struck McCaskill with a pair of brass knuckles, and Singleton went through the victim's pockets, while the others continued hitting and kicking him. One of the other men, Willie Rowe, ran over McCaskill's neck with a bicycle. Singleton urinated on the unconscious victim, and the men then fled. When McCaskill was found, he was unconscious and covered in ant bites, with severe injuries to his head, face, and ear, and a bicycle track across his neck. Police found his wallet nearby. McCaskill, who suffered an anoxic brain injury, died after spending several months in a nursing home in a vegetative state.

Detectives interviewed Singleton, who admitted that he and Johnson had been involved in the attack on McCaskill and that Rowe had ridden a bicycle over his neck. Singleton also implicated Johnson in the attack on Crawford. Detectives then went to Johnson's aunt's house in an attempt to interview Johnson, who lived with his aunt intermittently. Alerted to their arrival, Johnson exited from the rear of the house and ran away. The aunt gave consent to a search of the home, and the detectives found a pair of brass knuckles under

3

a cushion on the sofa on which Johnson had been sleeping. They also seized a pair of shoes from that same room. On the brass knuckles was blood that was later matched to that of McCaskill. The shoes' tread matched the footprint on the back of Crawford's shirt. In a post-arrest police interview, which was recorded and played for the jury, Johnson admitted his involvement in the crimes against both Crawford and McCaskill.

1. Despite Johnson's contention to the contrary, the evidence as summarized above was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Johnson was guilty of the crimes of which he was convicted. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). Johnson asserts that the State failed to prove the requisite causation necessary to sustain each of his felony murder convictions. Specifically, Johnson points to evidence that victim Crawford's death may have resulted in part from the decision of his medical team not to perform surgery to mitigate his injuries. As to victim McCaskill, Johnson highlights evidence suggesting that he received substandard treatment while in the nursing home. However, even construing the evidence so as to find that these other factors contributed to the victims' deaths, the fact remains that the violent attacks Johnson perpetrated

4

against both victims constituted the proximate cause of both of their deaths. See Davis v. State, 290 Ga. 757, 760 (4) (725 SE2d 280) (2012) (proximate causation established by evidence that underlying felony "'directly and materially contributed to the happening of a subsequent accruing immediate cause of the death'"); see also Larkin v. State, 247 Ga. 586 (1) (278 SE2d 365) (1981) (knife attack by defendant was proximate cause of victim's death, where victim died from complications of surgery performed on knife wound); Wilson v. State, 190 Ga. 824 (2) (10 SE2d 861) (1940) (assault by defendant was proximate cause of victim's death, where victim died nine months after assault from infection that was secondary to the wounds sustained in the assault).

2. Johnson next contends that his confession of involvement in both crimes was improperly induced by a "hope of benefit." See former OCGA § 24-3-50 (to be admissible, a confession must have been made "voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury").[2] Finding Johnson's statement to have been made voluntarily, the trial

---

[2] Under the new Georgia Evidence Code, effective for trials held on or after January 1, 2013, this language is now codified at OCGA § 24-8-824.

court rejected this argument at a pre-trial Jackson v. Denno[3] hearing and again when the objection was renewed at trial.

> Under Georgia law, only voluntary incriminating statements are admissible against the accused at trial, and the State has the burden of proving the voluntariness of a confession by a preponderance of the evidence. [Former] OCGA § 24-3-50 requires that an admissible confession must have been made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury. The promise of a benefit that will render a confession involuntary under [former] OCGA § 24-3-50 must relate to the charge or sentence facing the suspect.

(Citations and punctuation omitted.) Foster v. State, 283 Ga. 484, 485 (2) (660 SE2d 521) (2008). Whether a statement was made voluntarily is to be determined by assessing the totality of the circumstances. Vergara v. State, 283 Ga. 175 (1) (657 SE2d 863) (2008). "Where the facts surrounding a police interview are undisputed because the recorded interview is part of the appellate record, our review of the trial court's admissibility ruling is de novo." Wilson v. State, 293 Ga. 508, 510 (2) (748 SE2d 385) (2013).

On the day of his arrest on September 11, 2009, Johnson was interviewed by Valdosta police detective Steven Thompson. The recording of the interview

---

[3] Jackson v. Denno, 378 U. S. 368 (84 SCt 1774, 12 LE2d 908) (1964).

reflects that the detective advised Johnson of his Miranda[4] rights, which Johnson then knowingly and voluntarily waived, as reflected on a signed waiver form. The interview began with Detective Thompson telling Johnson he wanted to hear his side of the story regarding several recent attacks, that he had already spoken with Corey Singleton and Willie Rowe, and that one of the victims had died. Johnson initially denied any involvement in the attacks. After Johnson admitted to owning brass knuckles, Detective Thompson told Johnson that a pair of brass knuckles had been seized from his aunt's home and that a victim's DNA had been found on them; he also falsely claimed that Johnson's DNA was detected on them. Detective Thompson then warned Johnson not to lie and deny his presence at the attacks because there was evidence he was there, said he wanted to hear Johnson's version of events, and further warned: "I can get up and walk out this door and send your a** to the county jail and change this charge from aggravated assault to a f**ing murder charge." Johnson then began backpedaling, first admitting his presence during the attacks, and ultimately admitting his participation and recounting the events leading to both assaults.

---

[4] Miranda v. Arizona, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

7

Johnson contends that Detective Thompson's statements implied that, if Johnson did not confess, he would be charged with murder, and that such an implication amounted to an improper hope of benefit, i.e., the promise of a lighter punishment if Johnson did confess. We disagree with this characterization. Detective Thompson's statement that Johnson could be charged with murder was a true statement that emphasized the gravity of the situation Johnson faced. See Sosniak v. State, 287 Ga. 279, 288-289 (1) (C) (695 SE2d 604) (2010) (officer's remark that prosecutor was "looking at a death penalty case" was merely an explanation of the seriousness of defendant's situation); Preston v. State, 282 Ga. 210, 212 (2) (647 SE2d 260) (2007) (officer's statements regarding penalties for murder and fact that charging decisions are informed by recommendations from police did not offer "hope of benefit" but rather merely explained the seriousness of defendant's situation). The admonition not to lie was not improper, as it is well established that exhortations to tell the truth do not constitute the giving of a hope of benefit that renders a confession involuntary. Mangrum v. State, 285 Ga. 676 (2) (681 SE2d 130) (2009); State v. Roberts, 273 Ga. 514 (3) (543 SE2d 725) (2001), overruled on other grounds by Vergara v. State, 283 Ga. 175 (1) (657 SE2d 863)

8

(2010). At no time did Detective Thompson indicate that a confession would result in lesser charges; rather, he merely suggested that Johnson would be well served by offering his version of events as a means of justifying or mitigating his role in the assaults. See Pittman v. State, 277 Ga. 475 (2) (592 SE2d 72) (2004) (officer's suggestions that defendant had not intended to kill victim did not offer improper hope of benefit). Cf. Canty v. State, 286 Ga. 608 (690 SE2d 609) (2010) (confession was induced by improper hope of benefit where defendant confessed only after being told that admitting to multiple charges at once could result in a shorter sentence). Finally, the detective's false claim that Johnson's DNA was found on the brass knuckles does not affect the admissibility of the confession, as deception by interrogating officers does not render a confession involuntary unless it is "calculated to procure an untrue statement." (Citation and punctuation omitted.) DeYoung v. State, 268 Ga. 780, 789 (8) (493 SE2d 157) (1997). We therefore conclude that Johnson's statement was voluntarily given and properly admitted at trial.

3. Johnson next contends that his trial counsel rendered ineffective assistance. To establish ineffective assistance of counsel, a defendant must show that his trial counsel's performance was professionally deficient and that

9

but for such deficient performance there is a reasonable probability that the result of the trial would have been different. Strickland v. Washington, 466 U. S. 668, 695 (104 SCt 2052, 80 LE2d 674) (1984); Wesley v. State, 286 Ga. 355 (3) (689 SE2d 280) (2010). To prove deficient performance, one must show that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." Romer v. State, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013). Courts reviewing ineffectiveness claims must apply a strong presumption that counsel's conduct fell within the wide range of reasonable professional performance. Id. Thus, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course. Id. If the defendant fails to satisfy either the "deficient performance" or the "prejudice" prong of the Strickland test, this Court is not required to examine the other. See Green v. State, 291 Ga. 579 (2) (731 SE2d 359) (2012).

At the new trial hearing, Johnson's trial counsel testified that the defense strategy going into trial was for Johnson to take the stand and testify that he had been at home when the crimes were committed, that he knew the details of the

10

crimes only from having heard about them from friends, and that his confession was coerced out of fear. Counsel testified that he had numerous discussions with Johnson about this strategy and prepared him extensively for his trial testimony. At trial, however, once the prosecution had presented its case, Johnson was too shaken and nervous to testify, and thus, unexpectedly, elected not to testify.

Johnson now faults trial counsel for various alleged shortcomings. First, he cites the failure to present any witnesses on Johnson's behalf, including an alleged alibi witness. The testimony from the new trial hearing reflects that counsel made reasonable attempts, without success, to locate the unnamed alleged alibi witness. In addition, counsel had intended and was prepared to call Johnson's sisters as character witnesses, as well as Johnson's aunt. However, when Johnson opted not to testify, counsel decided not to call any witnesses, believing character witnesses would be unhelpful and fearing possible inconsistencies in the aunt's testimony. Insofar as counsel's conduct regarding these issues was diligent and his decisions were reasonable in light of the circumstances, Johnson has failed to show deficient performance in this regard.

Johnson next contends that trial counsel rendered ineffective assistance in

failing to object when one of the detectives on the case testified to statements made by Johnson's aunt confirming that Johnson had been living at her home and sleeping on the sofa where the brass knuckles were found. Even assuming arguendo that the failure to object constituted deficient performance, Johnson cannot establish prejudice, insofar as the officer testified that, when he arrived at the aunt's house, he saw Johnson sitting on the sofa before Johnson, upon seeing the officer, exited through the rear of the house and fled. Because there was admissible evidence establishing Johnson's presence in the room of his aunt's home where the brass knuckles and shoes linked with the crimes were found, the hearsay testimony on this point was cumulative and its admission did not in reasonable probability affect the outcome of the trial.

Johnson also faults trial counsel for failing to elicit testimony regarding the size of the shoes found at Johnson's aunt's house, in furtherance of a theory that the shoes found would not have fit Johnson's feet and thus were not his. Counsel testified that he had intended to explore this theory when Johnson testified; did not want to "tip off" the State to this aspect of the defense during its case-in-chief; and was then prevented from pursuing this defense when Johnson decided not to testify. We find that counsel's strategy in this regard

12

was reasonable; further, even with evidence that the shoes did not fit Johnson, the fact that the shoes were in Johnson's possession nonetheless linked him to the crimes, and thus, particularly in light of all the other inculpatory evidence, there was no prejudice from the failure to elicit this particular evidence.

We find no deficient performance or prejudice in counsel's failure to retain an expert witness on false confessions, given counsel's intended strategy of calling Johnson himself to testify that he was coerced into confessing, and Johnson's failure to make any proffer as to what testimony such an expert might have given. Likewise, there was no deficiency or prejudice in counsel's failure to adduce expert testimony regarding the cause of death of either victim; as Johnson's counsel acknowledged at the motion for new trial hearing, trial counsel conducted a thorough cross-examination of both medical examiners regarding the possible causes of death of each victim, focusing on the decision not to perform surgery on Crawford and the substandard treatment rendered to McCaskill at the nursing home as factors in the deaths. In addition, contrary to Johnson's contention, counsel did not render ineffective assistance in failing to request a specific jury instruction on the required nexus between a defendant's act and the victim's death; counsel reasonably believed that the medical

13

examiners' cross-examinations, together with the trial court's charge on felony murder, were sufficient to highlight the issue of causation.

4. Johnson contends, and the State agrees, that the trial court erred in failing to merge Count 2 (aggravated assault of Crawford) into Count 1 (felony murder predicated on that aggravated assault) and Count 5 (armed robbery of McCaskill) into Count 4 (felony murder predicated on that armed robbery). See Sumrall v. State, 264 Ga. 148 (2) (442 SE2d 246) (1994). Accordingly, Johnson's convictions and sentences on Counts 2 and 5 must be vacated.

Judgment affirmed in part and vacated in part. All the Justices concur.

Decided June 30, 2014.

Murder. Lowndes Superior Court. Before Judge Tunison.

Anderson & Bradley, Nancy L. Anderson, for appellant.

J. David Miller, District Attorney, Jessica W. Clark, Tracy K. Chapman, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Meghan H. Hobbs, Assistant Attorney General, for appellee.