305 Ga. 608
FINAL COPY

S18A1491.  PRICE v. THE STATE.

BENHAM, Justice.

Appellant George Edward Price was convicted of malice murder in connection with the shooting death of his estranged wife, Jackie Price. Appellant now contends that his statement to law enforcement should have been excluded at trial, that the trial court failed to consider his motion for new trial on the "general grounds," and that trial counsel was ineffective.  Finding no error, we affirm.[1]

Viewing the record in a light most favorable to the verdicts, the evidence adduced at trial established as follows.  At the time of the murder, Appellant and

---

[1] In September 2010, a Morgan County grand jury indicted Appellant for the offenses of murder and felony murder predicated on aggravated assault with a deadly weapon.  Following a jury trial conducted June 27-30, 2011, Appellant was found guilty on both counts, and, on June 30, 2011, Appellant was sentenced to life in prison without the possibility of parole for malice murder; the felony murder conviction was vacated by operation of law.  Appellant filed a timely motion for new trial on July 21, 2011, which was later amended on May 23, 2018.  Appellant's amended motion for new trial was heard and denied on May 23, 2018.  Appellant filed his notice of appeal on June 11, 2018; this case was docketed to the August 2018 term of this Court and was submitted for a decision on the briefs.

the victim had been married for approximately fifteen years but were recently separated, with the victim living at the Morgan County residence of her friend Virginia Blanton. The jury learned that, though the couple had separated before, Jackie had become set on divorcing and had informed Appellant of her decision in a phone call on the evening before the murder. On the day of the murder, Blanton left the residence at approximately 11:20 a.m., while Jackie remained in bed because she reportedly felt unwell. Shortly thereafter, Appellant's conspicuously large, red van was observed in the area by neighbors who were familiar with both Appellant and his vehicle. Later that afternoon, a child stopped by the Blanton residence for a snack and discovered Jackie on the floor in a pool of blood. The jury heard testimony that, at the time her body was discovered, the victim had been dead for "quite some time" and, further, that the residence bore no signs of forced entry, burglary, or struggle. The medical examiner testified that the victim had died as a result of gunshot wounds and that the manner of death was homicide.

Appellant was subsequently questioned by law enforcement. After initially giving various vague and inconsistent accounts of the day, he ultimately admitted that he had shot his estranged wife when he visited her to discuss their

marriage. Appellant accurately described details of the murder scene — including the victim's clothing, her location in the residence, and the number of times she had been shot — and his hands tested positive for gunshot residue.

1. Though not raised by Appellant as error, in accordance with this Court's standard practice in appeals of murder cases, we have reviewed the record and find that the evidence, as summarized above, was sufficient to enable a rational trier of fact to find Appellant guilty beyond a reasonable doubt of murder. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Appellant first contends that his statement to law enforcement was involuntary under Georgia law and, consequently, inadmissible. Specifically, Appellant complains that an investigator suggested that she was going to personally discuss the case with "the judge," that Appellant would not see the "light of day," and, further, that Appellant's hands had tested positive for gunshot residue even though the results of that test were not yet available. These arguments are without merit.

The relevant statutory provision concerning confessions, as it existed at the time of Appellant's trial in 2011, provided that, "[t]o make a confession admissible, it must have been made voluntarily, without being induced by

3

another by the slightest hope of benefit or remotest fear of injury." See former OCGA § 24-3-50. This Court has consistently interpreted the phrase "slightest hope of benefit" not in the colloquial sense, but as it is understood in the context within the statute, focusing "on promises related to reduced criminal punishment — a shorter sentence, lesser charges, or no charges at all." Brown v. State, 290 Ga. 865, 868-869 (725 SE2d 320) (2012). See also State v. Chulpayev, 296 Ga. 764 (2) (770 SE2d 808) (2015). However, a statement by law enforcement "not relating to charges or sentences, including a promise regarding release after questioning, has been held to constitute only a 'collateral benefit,' as that phrase is used in OCGA § 24-3-51, and even if it induces a confession, it does not require the automatic exclusion of that evidence." Brown, 290 Ga. at 869. See also former OCGA § 24-3-51 ("The fact that a confession has been made under a spiritual exhortation, a promise of secrecy, or a promise of collateral benefit shall not exclude it.").[2]

As for "remotest fear of injury," it is "[p]hysical or mental torture . . . that

---

[2] Former OCGA §§ 24-3-50 and 24-3-51 have been carried forward in our new Evidence Code at OCGA §§ 24-8-824 and 24-8-825 without any substantive change. See Brown, 290 Ga. at 868 n.1.

4

prevents a confession from being admissible[.]" See Browner v. State, 296 Ga. 138, 142 (765 SE2d 348) (2014). Further, the employment of trickery or deceit to obtain a confession does not render the resulting statement inadmissible so long as those tactics are not designed to procure an untrue statement and also do not amount to "a slightest hope of benefit or remotest fear of injury." (Citation and punctuation omitted.) State v. Ritter, 268 Ga. 108, 110 (485 SE2d 492) (1997); Moore v. State, 230 Ga. 839, 840 (199 SE2d 243) (1973).

"Whether a statement was made voluntarily is to be determined by assessing the totality of the circumstances." Johnson v. State, 295 Ga. 421, 424 (761 SE2d 13) (2014). Though the trial court entered an order with findings of fact and conclusions of law following a Jackson-Denno[3] hearing, the relevant facts here arise solely from Appellant's video-recorded interview with investigators and, thus, are not in dispute. Accordingly, we review this claim de novo. See Brown, 290 Ga. at 865; Vergara v. State, 283 Ga. 175 (657 SE2d 863) (2008).

As an initial matter, though Appellant had been advised of his Miranda[4]

---

[3] See Jackson v. Denno, 378 U. S. 368 (84 SCt 1774, 12 LE2d 908) (1964).

[4] See Miranda v. Arizona, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

5

rights numerous times on the day in question (and had executed a written waiver), his interview was non-custodial; the video-recorded statement plainly reflects that both Appellant and law enforcement understood that Appellant was free to leave at any time during the interview. See, e.g., Heckman v. State, 276 Ga. 141 (1) (576 SE2d 834) (2003). During the course of the interview, investigators implored Appellant to tell the truth and to help himself, which was not improper. See Stinski v. State, 281 Ga. 783 (2) (a) (642 SE2d 1) (2007). Though an investigator intimated that she would go directly to "the judge" concerning Appellant's honesty and make a recommendation as to whether Appellant would "get out," it is permissible "for the police to tell a suspect that the trial judge may consider [his] truthful cooperation with the police." (Citation and punctuation omitted.) Id. at 784 (2) (a).[5] These remarks, which were "framed . . . in terms of what [the investigator] wanted to be able to tell the judge," did not render the statement involuntary. Baughns v. State, 335 Ga. App. 600, 605 (782 SE2d 494) (2016). The investigator's vague references to

---

[5] See Wilson v. State, 285 Ga. 224, 228 (3) (675 SE2d 11) (2009) (recognizing that "[a] detective's statement of opinion as to how a judge and jury might view a suspect's lack of cooperation does not relate to the charge or sentence facing the suspect") (citation and punctuation omitted).

Appellant "getting out" is, at most, a possible "collateral benefit" since "no one promised [A]ppellant that he would not be charged with a crime or that he would receive reduced charges, sentencing or punishment if he made incriminating statements." Woodall v. State, 294 Ga. 624, 629 (4) (754 SE2d 335) (2014). Cf. Brown, 290 Ga. at 869 (no hope of benefit where investigators told defendant he could "go home" after questioning); In the Interest of D. T., 294 Ga. App. 486 (2) (669 SE2d 471) (2008) (same).

With respect to an investigator suggesting during the interview that Appellant would never "see the light of day" if he were not truthful, this, again, was an exhortation to tell the truth, not a promise of a lighter punishment. See Johnson v. State, 295 Ga. 421, 424 (761 SE2d 13) (2014) (no hope of benefit where defendant was warned not to lie because the investigator could, among other things, "get up and walk out this door and send [his] a** to the county jail"). Moreover, the remark "amounted to no more than an explanation of the seriousness of [Appellant]'s situation." Preston v. State, 282 Ga. 210, 212 (647 SE2d 260) (2007). Sosniak v. State, 287 Ga. 279, 289 (1) (C) (695 SE2d 604) (2010) (investigator's remark that defendant could "get a needle" simply an expression of the seriousness of the situation). Regarding the deception

7

concerning the gunshot residue on Appellant's hands, there is no indication that this ruse was intended to elicit an untrue confession or that it offered "a slightest hope of benefit or remotest fear of injury." As such, it, too, was permissible. See Drake v. State, 296 Ga. 286 (3) (766 SE2d 447) (2014) (exaggerations of incriminating evidence and false representations concerning the victim not impermissible during non-custodial interview); Johnson, 295 Ga. at 425 (interrogator's false claim concerning DNA evidence did not affect voluntariness of statement); Daniel v. State, 285 Ga. 406 (5) (677 SE2d 120) (2009) (deception in interview concerning whether defendant was suspect permissible tactic).

Finally, though Appellant was interviewed over the course of approximately six hours, he was offered food and drink, and nothing in the video suggests "excessively lengthy interrogation, physical deprivation, brutality, or other such hallmarks of coercive police activity" that would result in the remotest fear of injury. (Citation and punctuation omitted.) Drake, 296 Ga. at 291. Accordingly, after examining the totality of the circumstances, the trial court did not err in concluding that Appellant's statement was voluntary.

3. Appellant next claims that the trial court erred by failing to consider his

motion for new trial on the "general grounds." Specifically, he contends that the order denying his motion for new trial does not reflect that the trial court evaluated the credibility of the witnesses and weighed the evidence in deciding whether to exercise its discretion to grant a new trial in its role as the "thirteenth juror." See White v. State, 293 Ga. 523, 524 (753 SE2d 115) (2013) ("In exercising that discretion, the trial judge must consider some of the things that she cannot when assessing the legal sufficiency of the evidence, including any conflicts in the evidence, the credibility of witnesses, and the weight of the evidence."). We disagree.

The order denying Appellant's motion for new trial states as follows: "The Defendant's Motion for New Trial, having regularly come on to be heard before me this day, argument of counsel for the State and the Defendant having been heard and considered, IT IS HEREBY ORDERED AND ADJUDGED that Defendant's Motion for New Trial is DENIED." While the order does not specifically reflect that the trial judge exercised its broad discretion as the thirteenth juror, this Court "must presume that the trial judge knew the rule as to the necessity of exercising his discretion, and that he did exercise it[.]" Martin & Sons v. Bank of Leesburg, 137 Ga. 285, 291 (73 SE 387) (1911). As

we have explained before, when a trial court enters an order denying a motion for new trial and, "without more, recites that the new trial is refused or denied, this will be taken to mean that [the judge] has in the exercise of his discretion approved the verdict." Wilder v. State, 193 Ga. 337, 338 (18 SE2d 546) (1942). See also Butts v. State, 297 Ga. 766, 771-772 (778 SE2d 205) (2015).

Here, there is nothing to suggest that the trial court did not properly exercise its discretion. "The court did not state the incorrect standard in its order, and nothing in the record indicates that the court was unaware of its responsibility." (Citations omitted.) Allen v. State, 296 Ga. 738, 741 (770 SE2d 625) (2015). Likewise, "[t]his is not a case where the trial court explicitly declined to consider the credibility of the witnesses in denying the defendant's motion for new trial on the general grounds" or where the trial court expressed "its belief that it had no discretion to grant a new trial despite disagreeing with the jury's verdict." (Citations omitted.) Butts, 297 Ga. at 772. Accordingly, this claim is without merit.

4. Finally, Appellant contends that trial counsel was ineffective by failing to investigate or present mitigation evidence at sentencing or to make any such argument on his behalf. To succeed on his claim, Appellant bears the heavy

10

burden of showing "both that his counsel performed deficiently and that, but for the deficiency, there is a reasonable probability that the outcome would have been more favorable." Slaton v. State, 303 Ga. 651, 652 (814 SE2d 344) (2018). See also Strickland v. Washington, 466 U. S. 668, 687, 694 (104 SCt 2052, 80 LE2d 674) (1984).

> To prove deficient performance, one must show that his attorney performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms. Courts reviewing ineffectiveness claims must apply a strong presumption that counsel's conduct fell within the wide range of reasonable professional performance. Thus, decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course. If the defendant fails to satisfy either the "deficient performance" or the "prejudice" prong of the Strickland test, this Court is not required to examine the other.

(Citation omitted.) Slaton, 303 Ga. at 652-653. Even if we were to presume that trial counsel acted deficiently by failing to investigate or present mitigation evidence or argument, Appellant's claim fails on prejudice grounds.

Though Appellant faults trial counsel for failing to conduct a mitigation investigation and speculates that there were "family members" who could have provided mitigation testimony, "he made no proffer [at the hearing on his

11

motion for new trial] as to what a thorough investigation would have uncovered or what the essential witnesses would have said." Domingues v. State, 277 Ga. 373, 374 (589 SE2d 102) (2003). Indeed, at a motion for new trial hearing, "'(e)ither the uncalled witness must testify or the defendant must introduce a legally recognized substitute for the uncalled witness's testimony.'" (Citation omitted.) Crowder v. State, 294 Ga. 167, 169-170 (751 SE2d 334) (2013). Without having made such an evidentiary showing at the hearing, Appellant cannot demonstrate prejudice on his claim that counsel was ineffective. Id. See also Bell v. State, 287 Ga. 670 (697 SE2d 793) (2010) ("Bell did not offer any evidence at the motion for new trial hearing as to whether the witnesses would have testified, offered only speculation as to the possible testimony of one of the witnesses, and did not offer even speculation about the possible testimony of the other witness. He again has shown no prejudice."). Accordingly, Appellant is not entitled to relief on this claim.

Judgment affirmed. All the Justices concur.

Decided March 4, 2019 — Reconsideration denied March 27, 2019.

Murder. Morgan Superior Court. Before Judge Prior.

Benjamin A. Pearlman, for appellant.

Stephen A. Bradley, District Attorney, Jeff P. Burks, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Katherine D. Emerson, Vanessa T. Sassano, Assistant Attorneys General, for appellee.