306 Ga. 524
FINAL COPY

S19A0559.  HOLMES v. THE STATE.

BETHEL, Justice.

De'Andre Holmes appeals from the denial of his motion for new trial after a jury found him guilty of malice murder and other offenses in connection with the death of Cory Joseph.[1] On appeal,

[1] The crimes occurred on March 7, 2007.  Holmes was indicted by a Richmond County grand jury on June 12, 2007, for malice murder, felony murder predicated on the underlying felony of aggravated assault, and possession of a firearm during the commission of a crime. Following a trial held in August 2008, Holmes was found guilty on all counts. On October 2, 2008, Holmes was sentenced to serve life in prison for malice murder and five years consecutive for possession of a firearm during the commission of a crime. The trial court purported to merge the felony murder count with the malice murder count, but the felony murder count was vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 371-372 (4) (434 SE2d 479) (1993).
    Holmes filed a motion for new trial on October 9, 2008, and orally amended the motion for new trial at the hearing on February 18, 2015. The trial court denied the motion for new trial on July 14, 2015. The trial court vacated and re-entered its order denying the motion for new trial on October 5, 2015. Holmes filed a notice of appeal on November 5, 2015. However, his notice of appeal was untimely, and this Court dismissed the appeal for lack of jurisdiction. *Holmes v. State*, Case No. S17A0926 (Feb. 6, 2017). The trial court granted Holmes' motion for out-of-time appeal on June 18, 2018, and Holmes filed a notice of appeal on July 12, 2018. This case was docketed to the Court's April 2019 term and was orally argued on April 16, 2019.

Holmes argues that the evidence presented against him was insufficient because the State failed to prove that venue was proper in Richmond County. He further argues that the trial court failed to exercise its discretion to act as the "thirteenth juror" in ruling upon Holmes' motion for new trial and instead inappropriately applied a sufficiency-of-evidence standard to Holmes' statutory challenge on the general grounds. We conclude that the State presented sufficient evidence to support Holmes' convictions. However, because the record shows that the trial court applied only a sufficiency-of-evidence standard in considering Holmes' motion for new trial on the general grounds, we vacate in part the trial court's order denying his motion for new trial and remand the case so that the trial court may exercise its discretion as the "thirteenth juror" and, in so doing, reweigh the evidence presented at trial. As explained below, we do not reach Holmes' additional enumeration of error regarding the sufficiency of the evidence presented by the State regarding venue.

1. Viewed in the light most favorable to the verdicts, the evidence presented at trial showed the following. On the night of

March 7, 2007, Wilkins was in her house when she heard a crash outside. Wilkins saw that a car had crashed through the side of her storage shed. Wilkins went outside and saw the car try to back up, but the car was stuck on some bricks. Wilkins saw one man exit the passenger's side of the car and wander through Wilkins' yard. Another man, later identified as Holmes, got out of the back seat on the driver's side and told Wilkins that she should call the police because he did not have insurance.

Wilkins yelled for her daughter, who was in the house, to call the police. The man who exited the passenger's side of the vehicle ran away across her driveway, down the street. It was dark outside, and Wilkins could not see the passenger's face well. Wilkins then attempted to make Holmes sit down, as he appeared hurt and had a spot of blood on his shirt. Holmes said he was "all right" and ran off.

One of Wilkins' neighbors came to Wilkins' house after the car crashed into the shed. The neighbor smelled something burning and went to turn off the car. When she reached into the car, the neighbor found a person, later identified as Cory Joseph, unresponsive in the

driver's seat of the vehicle.

Richmond County Sheriff's Deputy Valentina Mancusi responded to the scene a few minutes after Wilkins' daughter called 911. Deputy Mancusi secured the area, found the vehicle still running in Wilkins' shed, and noticed Joseph sitting in the driver's seat, slumped over the console with his head in the front passenger seat. Deputy Mancusi later testified that Joseph appeared to have been shot in the back of the head, had no pulse, and was not responsive. Emergency units responded to the scene shortly thereafter and turned off the vehicle but were unable to revive Joseph.

Sergeant James Gordon of the Richmond County Sheriff's Office crime scene unit also responded to the 911 call. When Gordon arrived, he spoke with Wilkins and an investigator on site and learned that the man in the car was dead from a possible gunshot. Sergeant Gordon then began photographing and videotaping the scene.

While examining the vehicle, Sergeant Gordon found that the

4

car's glove compartment was open. He also noticed that Joseph's wallet was open, lying on the vehicle's floorboard with three cards belonging to Joseph strewn next to it. Sergeant Gordon also found a nine-millimeter cartridge casing on the front passenger's side floorboard. Joseph had injuries to his face that were consistent with two marks on the inside of the windshield. Gordon found a white zip-up jacket in the driveway and collected it as evidence. Wilkins believed that the jacket belonged to one of the men who had been in the car. Gordon also noticed that the vehicle's radio had been detached from the console.

While searching the car, Sergeant Gordon located a dental grill in the vehicle's back seat area. The grill was turned over to the Georgia Bureau of Investigation (GBI) for processing and was later found to contain DNA that matched Holmes.

Sergeant Gordon testified that Joseph suffered a wound to the back of his head that caused him to bleed. Gordon also testified that the pattern of the blood was consistent with Joseph having been shot before the vehicle impacted Wilkins' shed and thrust forward into

the vehicle's windshield on impact. Joseph also had an injury around his eye and abrasions on his cheek and chin. The GBI medical examiner who performed Joseph's autopsy determined that Joseph's cause of death was a contact gunshot wound[2] to the back of the head and that his manner of death was homicide. The medical examiner testified that the bullet traveled from the right side to the left side of Joseph's skull in a slightly downward trajectory.

Settron Bell, a friend of Holmes, testified at trial that he was with Holmes on March 7, 2007. Holmes lived in Waynesboro. Bell and Holmes were given a ride by a third person from Waynesboro to Augusta so that they could go to Bell's cousin's house. Bell testified that, when he and Holmes arrived in Augusta, they were dropped off near an apartment complex, but rather than visiting Bell's cousin, they walked for about 15 minutes to a convenience store. At

---

[2] The medical examiner explained that a contact gunshot wound occurs when the muzzle of the firearm is pressed against the skin of the individual being shot, which causes an abrasion. The medical examiner also determined that the wound was a contact gunshot wound due to the presence of soot and powder in Joseph's skull, noting that the nature of the wound indicated that the gun's muzzle must have been placed against Joseph's head as the shot was fired.

the store, Holmes asked Joseph for a ride. Bell entered the front passenger seat, and Holmes entered the rear passenger door behind Bell. They drove for about five minutes, and Bell said that Joseph told them that he could not take them any further because he had to go to work. Bell said that he then heard a gunshot, and the car immediately ran off the road and crashed into Wilkins' shed. Bell jumped out and ran away, while Holmes stayed to talk to Wilkins. Bell saw Holmes with a gun earlier that day before Holmes and Bell got into the car with Joseph.

Bell saw Holmes again about a week after the shooting. Bell said that when he talked to Holmes, Holmes was "kind of crying and stuff and [saying] he didn't really mean to do it[.]"

Holmes was interviewed by Detective Steve Fanning on April 15, 2007. During the interview, Holmes gave conflicting accounts as to his whereabouts and activities in the hours leading up to Joseph's death. Holmes initially stated that he and Bell went to Augusta to visit his baby's mother and then received a ride to McDonald's and, later, to Burke County. After making this statement, Holmes

admitted getting into Joseph's car, but he claimed that two unknown black males were in the back seat with him. In this version, Holmes claimed that one of the unknown men shot Joseph and that Holmes, Bell, and the two men all fled on foot.

In June 2008, Holmes wrote a letter to Joseph's mother, claiming that as Joseph was dropping them off, Holmes pulled out his gun, and that while checking its chamber, Holmes "slipped." In this letter, Holmes claimed that he did not know the gun was loaded, that Bell told him to hold the gun, and that he blacked out. The sheriff's office obtained a DNA specimen from Holmes and submitted the envelope containing the letter to the GBI for testing. Holmes' DNA was found on the envelope.

At trial, Holmes testified in his own defense. He admitted being angry on the day of the shooting, having a gun, pulling the trigger, and shooting Joseph, although he claimed that he shot Joseph accidentally. He also admitted writing the letter to Joseph's mom and giving four different versions of the events that had occurred on the night of Joseph's death.

Though not raised by Holmes as error, in accordance with this Court's practice in appeals of murder cases, we have reviewed the record and find that the evidence, as summarized above, was sufficient to enable a rational trier of fact to find Holmes guilty beyond a reasonable doubt of the crimes of which he was convicted. *Jackson v. Virginia,* 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). See also *Brown v. State,* 302 Ga. 454, 456 (1) (b) (807 SE2d 369) (2017) ("It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence." (citation and punctuation omitted)).

2.   Holmes argues that the trial court failed to exercise its discretion as the "thirteenth juror" because, rather than reweighing the evidence presented at trial, it applied a sufficiency-of-evidence standard when it considered Holmes' motion for new trial on the general grounds.  We agree.

In his motion for new trial, Holmes specifically asserted that the verdict was "contrary to the evidence, and without evidence to support it," was "decidedly and strongly against the weight of the

9

evidence," and was "contrary to the law and principles of justice and equity." See OCGA §§ 5-5-20 and 5-5-21. These statutes "afford the trial court broad discretion to sit as a 'thirteenth juror' and weigh the evidence on a motion for new trial alleging these general grounds." (Citation and punctuation omitted.) *Walker v. State*, 292 Ga. 262, 264 (2) (737 SE2d 311) (2013). "In exercising that discretion, the trial judge must consider some of the things that [he or] she cannot when assessing the legal sufficiency of the evidence, including any conflicts in the evidence, the credibility of witnesses, and the weight of the evidence." *White v. State*, 293 Ga. 523, 524 (2) (753 SE2d 115) (2013).

This Court presumes, in the absence of affirmative evidence to the contrary, that the trial court properly exercised its discretion pursuant to OCGA §§ 5-5-20 and 5-5-21. *Wilson v. State*, 302 Ga. 106, 108 (II) (a) (805 SE2d 98) (2017). However, when the record reflects that the trial court reviewed the motion for new trial only for legal sufficiency of the evidence, the trial court has failed to exercise such discretion. *White*, 293 Ga. at 525.

In its order denying Holmes' motion for new trial, the trial court found that "the State presented sufficient evidence both to prove venue beyond a reasonable doubt, and to prove that [Holmes] committed the offenses set forth in the indictment beyond a reasonable doubt." The order made no reference to the general grounds, gave no indication that the trial court had considered or reweighed the evidence presented at trial, and did not suggest that the trial court had exercised its discretion pursuant to OCGA §§ 5-5-20 and 5-5-21. Thus, although both the trial court and this Court have determined that the evidence presented in this case satisfies the *Jackson* standard of legal sufficiency, "[i]nasmuch as only the trial court is authorized by law to review a verdict pursuant to OCGA §§ 5-5-20 and 5-5-21, . . . the judgment must be vacated and the case remanded to the trial court for consideration of [Holmes'] motion for new trial under the proper legal standard." *Choisnet v. State*, 292 Ga. 860, 862 (742 SE2d 476) (2013).

3. In light of our decision to vacate a portion of the trial court's order denying Holmes' motion for new trial and to remand for

11

further proceedings, it is unnecessary for us to address Holmes' enumeration of error regarding evidence of venue at this time. That is because, unlike a situation in which the State does not present sufficient evidence of each of the substantive elements of a crime, the State is not barred from retrying a defendant on the same charges if it fails to present sufficient evidence of venue. See *Grier v. State*, 275 Ga. 430, 432 (2) (569 SE2d 837) (2002); OCGA § 16-1-8 (d) (1) ("A prosecution is not barred . . . if . . . [t]he former prosecution was before a court which lacked jurisdiction over the accused or the crime[.]"). Thus, in light of our remand of this case to the trial court on another ground, we need not consider whether the State presented sufficient evidence of venue in this case because such issue would become moot in the event the trial court granted Holmes a new trial on remand from this Court.

We note that the post-trial proceedings in this case have already taken more than 11 years. We therefore direct the trial court to rule on the general-grounds issue promptly upon remand and to ensure that any subsequent appeal is transmitted to this

12

Court expeditiously.

*Judgment affirmed in part and vacated in part, and case remanded with direction. All the Justices concur.*

DECIDED AUGUST 19, 2019.
Murder. Richmond Superior Court. Before Judge Brown.
*Charles A. Jones, Jr.*, for appellant.
*Natalie S. Paine, District Attorney, Joshua B. Smith, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior*

13

*Assistant Attorney General, Matthew M. Youn, Assistant Attorney General*, for appellee.