**FOURTH DIVISION**
**MERCIER, C. J.,**
**DILLARD, P. J., and LAND, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

April 25, 2025

# In the Court of Appeals of Georgia

A25A0515. RIVERA v. THE STATE.

DILLARD, Presiding Judge.

Following trial, a jury convicted Jose Rivera on two counts of voluntary manslaughter (as lesser-included offenses of murder and felony murder) and one count of aggravated assault. Rivera appeals the jury verdict and denial of his motion for new trial. In doing so, he contends the trial court erred by (1) refusing to instruct the jury on the offense of pointing a pistol at another (as a lesser-included offense of aggravated assault), and on the law pertaining to accident as an affirmative defense; and (2) failing to conduct a "thirteenth juror" review in denying his motion for new trial. For the following reasons, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the record shows that in the early evening of December 9, 2019, Christopher Morand met his friends, Amy Nava-Ramirez and Jason Reddick, at a home where Reddick stayed—which was also known as a local trap house.[2] Later that evening, the three friends were chatting in Reddick's room—away from the handful of other people at the house—when Rivera (a frequent guest at these gatherings) and one of his friends entered the room. Rivera immediately, angrily accused Morand of stealing a small bag of marijuana from him a few days earlier. But before Morand could rise from his chair, Rivera rushed over and began punching him. Morand called for Reddick to help him, but a moment later, Rivera drew a handgun tucked into his waistband behind his back and fatally shot Morand in the head. Rivera and his friend, as well as most of the others in the house (including Reddick and Nava-Ramirez), then fled the scene.

Not much later, a Gwinnett County police officer received a report of gun shots being fired from a house located at 528 Taylor Road—the address of the trap

---

[1] *See, e.g.*, *Libri v. State*, 346 Ga. App. 420, 421 (816 SE2d 417) (2018) (explaining the standard of review on the appeal of a criminal conviction).

[2] A "trap house" is generally defined as "a building used mainly for distributing drugs." *Scott v. State*, 326 Ga. App. 115, 117 (756 SE2d 220) (2014).

house—and responded to the scene. Upon arriving, the officer noticed an unoccupied parked vehicle, which was registered to Morand. Then, after walking around the residence, the officer observed that it appeared to be empty. Even so, he did not enter the residence because the narcotics officers who arrived on the scene to surveil the property told him to wait before doing so. Later that morning, another officer obtained a search warrant; and in the ensuing search of the house, officers found Morand's body in one of the bedrooms.

Meanwhile, an investigator with the Lawrenceville Police Department was dispatched to Morand's home after his parents contacted police after hearing from friends that he had been shot. After contacting some of these friends, the investigator learned that Nava-Ramirez witnessed the shooting. Then, later that morning, investigators interviewed Nava-Ramirez, who recounted the details of the tragic incident. And although Nava-Ramirez only knew Rivera by a nickname, she provided investigators with a video recorded on her cell phone several nights before the shooting—which showed Rivera and others partying at the trap house. From this video, officers determined Rivera's identity and, later, his apartment address. Rivera was then arrested.

The State charged Rivera, via indictment, with one count each of murder, felony murder, and aggravated assault. The case then went to trial, during which the State presented the foregoing evidence. After the State rested its case, Rivera testified in his own defense. In doing so, Rivera acknowledged confronting Morand about stealing his marijuana. He further admitted to punching Morand, but claimed Morand agreed to fight him to "settle" their dispute. Rivera then asserted that during this fight, Morand reached for a handgun laying on a nearby table. And according to Rivera, while he attempted to wrestle the weapon away from Morand, it fired, resulting in Morand's death. Rivera added that once he saw Morand was not moving, he fled the house, fearing retribution from the other people there.

After Rivera rested, the trial court held a charge conference, during which Rivera requested an instruction on accident as a defense to the murder charges . The trial court denied the request. Additionally, Rivera requested an instruction on the offense of pointing a pistol at another, as an offense underlying an involuntary-manslaughter charge[3] (which he requested as well), and also as a lesser-included

---

[3] *See* OCGA § 16-5-3 (a) ("A person commits the offense of involuntary manslaughter in the commission of an unlawful act when he causes the death of another human being without any intention to do so by the commission of an unlawful act other than a felony.").

offense of aggravated assault. The court agreed to the former in conjunction with an involuntary-manslaughter charge but expressed doubt about the latter. Following closing arguments, the trial court provided the agreed-upon instructions to the jury. Later, Rivera reiterated his objection to the court's refusal to provide a charge on accident and further objected to its failure to charge pointing a pistol at another, again, as a lesser-included offense of aggravated assault.

At the trial's conclusion, the jury convicted Rivera on two counts of voluntary manslaughter, as lesser-included offenses to the charges of murder and felony murder, and also convicted him on the count of aggravated assault. Rivera then filed a motion for new trial and an amended motion, in which he challenged the trial court's jury instructions and argued that his aggravated-assault conviction should have merged for sentencing purposes. He also maintained that the jury's verdict was contrary to the principles of justice and equity and strongly against the weight of the evidence. The State filed a response, after which the trial court issued an order, agreeing that the aggravated-assault conviction should have merged for sentencing purposes but otherwise denying Rivera's motion. This appeal follows.

1. Rivera first contends the trial court erred by refusing to instruct the jury on the offense of pointing a pistol at another, as a lesser-included offense of aggravated assault, and on the law pertaining to accident as a defense. We disagree.

As our Supreme Court has explained, for a requested jury instruction to be warranted, it must be "legal, apt, and precisely adjusted to some principle involved in the case."[4] And to authorize a jury instruction on a subject, there need only be "slight evidence supporting the theory of the charge."[5] Jury charges, then, "must be adjusted to the evidence in the case,"[6] which we review *de novo*.[7] But importantly, we review the trial court's "refusal to give a requested charge for an abuse of

[4] *Harrison v. State*, 310 Ga. 862, 866 (2) (855 SE2d 546) (2021) (punctuation omitted); *accord Barron v. State*, 297 Ga. 706, 708 (2) (777 SE2d 435) (2015).

[5] *Jones v. State*, 287 Ga. 770, 771 (2) (700 SE2d 350) (2010) (punctuation omitted); *accord Durden v. State*, 327 Ga. App. 173, 179 (6) (755 SE2d 909) (2014); *Hughes v. State*, 323 Ga. App. 4, 7 (2) (746 SE2d 648) (2013).

[6] *Millen v. State*, 267 Ga. App. 879, 881 (2) (a) (i) (600 SE2d 604) (2004); *see Nations v. State*, 345 Ga. App. 92, 100 (3) (812 SE2d 346) (2018) ("It is axiomatic that a jury charge must be adjusted to the evidence, apt, and a correct statement of the applicable law." (punctuation omitted)); *Reid v. State*, 341 Ga. App. 604, 613 (5) (a) (802 SE2d 42) (2017) (same).

[7] *See Hines v. State*, 350 Ga. App. 752, 759 (2) (830 SE2d 380) (2019) ; *accord Matos-Bautista v. State*, 353 Ga. App. 773, 777 (1) (839 SE2d 260) (2020).

discretion.''[8] With this in mind, we turn now to Rivera's two requested charges at issue.[9]

(a) *Pointing a gun or pistol at another*. Count 3 of the indictment charged Rivera with aggravated assault by alleging that he "made an assault" on Morand "with a deadly weapon, to wit: a firearm, by shooting [Morand] with said firearm . . ." Defining that offense, OCGA § 16-5-21 (a) (2) provides: "A person commits the offense of aggravated assault when he or she assaults . . . [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury. . . ." And under OCGA § 16-5-20 (a) (1) and (2), "[a] person commits the offense of simple assault when he or

---

[8] *Solis-Macias v. State*, 356 Ga. App. 561, 566 (3) (848 SE2d 180) (2020) (punctuation omitted); *accord Jones v. State*, 352 Ga. App. 380, 386 (2) (a) (834 SE2d 881) (2019).

[9] In its appellate brief, the State contends that our review of this issue is limited to whether the trial court's refusal to provide Rivera's requested charges amounted to plain error. But we only engage in plain-error review if the defendant failed to object to the trial court's refusal. *See* OCGA § 17-8-58 (b) (explaining the failure to object to a jury charge, or lack thereof, precludes appellate review of such portion of the jury charge, unless "such portion of the jury charge constitutes plain error which affects the substantial rights of the parties"). But here, Rivera's counsel requested the two charges at issue, objected when the trial court indicated it was not inclined to provide them, and reasserted his objection after the court was finished instructing the jury.

7

she . . . [a]ttempts to commit a violent injury to the person of another; or [c]ommits an act which places another in reasonable apprehension of immediately receiving a violent injury."

Here, Rivera maintains the trial court erred by denying his request to charge the jury on the misdemeanor of pointing a gun at another as a lesser-included offense of aggravated assault. More precisely, he claims that because the court provided the charge in the context of it being one of the misdemeanors supporting an instruction on involuntary manslaughter, it should also have been charged in the former context. But importantly, under OCGA § 16-11-102, that offense is defined as being when a person "intentionally and without legal justification points or aims a gun or pistol at another, whether the gun or pistol is loaded or unloaded." And although Rivera is correct that "pointing a firearm at another is an offense included in aggravated assault, it is not error to refuse a charge on it when the evidence does not reasonably raise the issue that defendant may be guilty only of the lesser crime."[10] In fact, our appellate courts have explicitly held that the "misdemeanor pointing of a firearm applies only [when] the victim is not placed in reasonable apprehension of immediate violent injury

---

[10] *Head v. State*, 233 Ga. App. 655, 659 (4) (504 SE2d 499) (1998).

8

by the pointing of the firearm . . . ."[11] Needless to say, if the pointing of a firearm "places the victim in reasonable apprehension of immediate violent injury, then the felony of aggravated assault, rather than the misdemeanor of OCGA § 16-11-102, has occurred."[12]

In this case, the evidence at trial presented two rather distinct accounts of how the shooting occurred. The State presented evidence that Rivera attacked Morand as he sat in a chair, striking him many times as he pleaded for his friend to help him, before drawing his handgun, pointing it at Morand, and shooting him in the head. In stark contrast, Rivera testified that he punched Morand several times but that the shooting occurred when Morand reached for a nearby handgun, a struggle over it ensued, and the gun fired. Even so, under either version, there was evidence for the jury to infer Morand was placed in reasonable apprehension of immediate violent

---

[11] *Id.* at 658 (4) (punctuation omitted); *see also Rhodes v. State*, 257 Ga. 368, 369-70 (5) (359 SE2d 670) (1987) (explaining if the victim is not placed in reasonable apprehension of immediate violent injury by the pointing of a firearm, only the misdemeanor of pointing a firearm, and not the felony of aggravated assault, has been committed, such as a case when the victim was completely unaware that a firearm was pointed at him).

[12] *Savage v. State*, 274 Ga. 692, 694 (3) (558 SE2d 701) (2002) (punctuation omitted); *accord Dailey v. State*, 313 Ga. App. 809, 817-18 (2) (a) (723 SE2d 43) (2012).

injury from a firearm ultimately pointed at him. And as a result, the trial court did not err in refusing to charge the jury on the misdemeanor of pointing a gun at another as lesser included offense of aggravated assault.[13]

(b) *Accident as an affirmative defense.* Rivera also contends the trial court erred by refusing to instruct the jury on accident as an affirmative defense. OCGA § 16-2-2 provides that "[a] person shall not be found guilty of any crime committed by misfortune or accident where it satisfactorily appears there was no criminal scheme or undertaking, intention, or criminal negligence." And this Court has held that accident "represents an affirmative defense on which the defendant bears the burden

---

[13] *See Dailey*, 313 Ga. App. at 817-18 (2) (a) (holding evidence did not warrant instruction on misdemeanor offense of pointing a firearm, as lesser-included offense of aggravated assault, in view of uncontradicted evidence that victims were placed in reasonable apprehension of immediate violent injury when defendant pointed gun at them); *Paul v. State*, 296 Ga. App. 6, 8-9 (2) (673 SE2d 551) (2009) (concluding instruction on lesser-included offense of pointing a pistol at another was not warranted in aggravated-assault prosecution, arising from incident in which victim was shot given evidence victim saw gun and tried to flee); *Head*, 233 Ga. App. at 658-59 (4)(finding evidence showed that both victims were aware defendant was pointing the gun at them and both feared immediate violent injury and, thus, counsel was not ineffective in failing to request instruction on misdemeanor offense of pointing a firearm, as lesser-included offense of aggravated assault); *see also Rhodes v. State*, 257 Ga. at 369-70 (6) (explaining evidence that shooting victim was aware of and apprehensive of immediate violent injury when defendant pointed handgun at him supported determination that pointing of handgun at victim was aggravated assault, rather than misdemeanor pointing of firearm at another).

of proof at trial."[14] But significantly, when the evidence shows that a defendant "acted with criminal intent, was engaged in a criminal scheme, or was criminally negligent, then the affirmative defense of accident is unavailable and a jury charge on accident is not warranted."[15]

Here, the *undisputed* evidence shows that Rivera confronted Morand to accuse him of stealing a small bag of marijuana from him a few days earlier and later began punching him when Morand refused to pay him back. Then—according to Rivera's version of the event—a struggle ensued when Morand reached for a nearby handgun and ended when the weapon somehow fired while pointed at Morand's head. Based on this evidence, Rivera argues a charge on accident was warranted. But even in his own account, Morand engaged in a physical altercation over a bag of illegal drugs. So, given this admitted criminal intent, the trial court properly denied his request for a jury instruction on accident.[16]

---

[14] *Brown v. State*, 339 Ga. App. 396, 399 (1) (793 SE2d 396) (2016) (punctuation omitted); *accord Lee v. State*, 320 Ga. App. 573, 578 (2) (740 SE2d 307) (2013).

[15] *Bennett v. State*, 320 Ga. 580, 588-89 (4) (910 SE2d 601) (2024) (punctuation omitted); *accord Wainwright v. State*, 305 Ga. 63, 71 (5) (a) (823 SE2d 749) (2019).

[16] *See Bennett*, 320 Ga. at 588-89 (4) (holding jury instruction on accident was not warranted in prosecution for murder when evidence showed that defendant

2. Rivera also claims the trial court failed to conduct a "thirteenth juror" review under OCGA §§ 5-5-20 and 5-5-21 when it denied his motion for new trial. Again, we disagree.

On motion for new trial, even if the evidence is legally sufficient to sustain a conviction, the trial court may order a new trial if the "verdict of a jury is found contrary to evidence and the principles of justice and equity"[17] or if the verdict is "decidedly and strongly against the weight of the evidence even though there may

---

approached victim in a dark area of parking lot, ordered victim not to move and give him money, which allegedly lead to victim drawing gun and being shot as defendant attempted to wrest gun away from victim); *Wainwright*, 305 Ga. at 71 (5) (a) ("Because the evidence presented at trial shows that [the defendant] intended to commit, and indeed was in the midst of committing, armed robbery and aggravated assault with a firearm when this alleged accidental discharge occurred, the trial court properly denied [the defendant's] request for a jury charge on accident" (punctuation omitted)); *Brockman v. State*, 292 Ga. 707, 728-29 (15) (739 SE2d 332) (2013) (holding charge on accident not warranted when based on defendant's own testimony, a "criminal scheme" was ongoing when defendant shot the victim), *superseded by statute on other grounds as recognized in Thompson v. State*, 370 Ga. App. 359 (897 SE2d 505) (2024); *Brown*, 339 Ga. App. at 399 (1) (concluding evidence did not support jury instruction on accident in prosecution for aggravated assault arising out of defendant's colliding with his former girlfriend's car because although defendant testified that his brakes failed, causing him to hit the back of former girlfriend's car, the unrefuted evidence showed that collision occurred while defendant was pursuing former girlfriend's vehicle, engaged in a criminal scheme to stalk her).

[17] OCGA § 5-5-20.

appear to be some slight evidence in favor of the finding."[18] Importantly, these statutes afford the trial court "broad discretion to sit as a 'thirteenth juror' and weigh the evidence on a motion for new trial alleging these general grounds."[19] And in exercising discretion as the "thirteenth juror," the trial court must consider some of the things it cannot when "assessing the legal sufficiency of the evidence, including any conflicts in the evidence, the credibility of witnesses, and the weight of the evidence."[20] But the trial court's discretion to grant a new trial under these circumstances "should be exercised with caution and invoked only in exceptional cases in which the evidence preponderates heavily against the verdict."[21] Significantly,

---

[18] OCGA § 5-5-21.

[19] *Holmes v. State*, 306 Ga. 524, 527 (2) (832 SE2d 392) (2019) (punctuation omitted); *accord Walker v. State*, 292 Ga. 262, 264 (2) (737 SE2d 311) (2013).

[20] *Wiggins v. State*, 330 Ga. App. 205, 210 (c) (767 SE2d 798) (punctuation omitted); *accord White v. State*, 293 Ga. 523, 524 (2) (753 SE2d 115) (2013); *Gresham v. State*, 354 Ga. App. 835, 838 (1) (841 SE2d 484) (2020).

[21] *Wiggins*, 330 Ga. App. at 210 (c) (punctuation omitted); *accord White*, 293 Ga. at 524 (2).

we presume, "in the absence of affirmative evidence to the contrary, that the trial court properly exercised its discretion pursuant to OCGA §§ 5-5-20 and 5-5-21."[22]

In this matter, Rivera explicitly argued in his motion and amended motion for new trial that the trial court should exercise its discretion under OCGA §§ 5-5-20 and 5-5-21 to reassess the credibility of the witnesses and grant him a new trial. Thus, the trial court had "an affirmative duty to exercise its discretion and weigh the evidence to determine whether a new trial as to his convictions was warranted."[23] And here, the trial court's order denying Rivera's motion for new trial is brief and provides as follows: "The Court having considered defendant's Motion for New Trial and Amended Motion for New Trial, and the matter having regularly come before the Court, after having considered the briefs and argument of counsel, it is hereby ordered that the defendant's motion for new trial is DENIED." Then, in the subsequent (and final) paragraph of the order (also consisting of only one sentence), the trial court

---

[22] *Holmes*, 306 Ga. at 528 (2) (punctuation omitted); *accord Gresham*, 354 Ga. App. at 838 (1).

[23] *Gresham*, 354 Ga. App. at 839 (1) (punctuation omitted); *accord Brockman*, 292 Ga. at 713 (4); *see Holmes*, 306 Ga. at 528 (2) (explaining, absence evidence to the contrary, we presume the trial court properly exercised its discretion pursuant to OCGA §§ 5-5-20 and 5-5-21).

noted that the aggravated-assault conviction should have merged for sentencing purposes, and the amended sentencing order would incorporate that corrected merger.

Although the order does not explicitly state that the trial judge exercised its "broad discretion as the thirteenth juror, this Court must presume . . . the judge knew the rule as to the necessity of exercising his discretion, and that he did exercise it."[24] And as the Supreme Court of Georgia has explained, when a trial court "enters an order denying a motion for new trial and, without more, recites that the new trial is refused or denied, this will be taken to mean that the judge has in the exercise of his discretion approved the verdict."[25] Here, there is nothing to suggest the trial court "did not properly exercise its discretion."[26] Indeed, the court did not "state the

---

[24] *Price v. State*, 305 Ga. 608, 612-13 (3) (825 SE2d 178) (2019) (punctuation omitted).

[25] *Price*, 305 Ga. at 613 (3) (punctuation omitted); *accord Butts v. State*, 297 Ga. 766, 771-72 (3) (778 SE2d 205) (2015).

[26] *Price*, 305 Ga. at 613 (3); *see Hodges v. State*, 309 Ga. 590, 592 (2) (847 SE2d 538) (2020) ("When a trial court exercises its discretion as the 'thirteenth juror,' it need not explicitly speak of its discretion with respect to the general grounds, and unless the record shows otherwise, we must presume that the trial court understood the nature of its discretion and exercised it" (punctuation omitted)).

incorrect standard in its order, and nothing in the record indicates that the court was unaware of its responsibility."[27] Nor is this a case in which the trial court "explicitly declined to consider the credibility of the witnesses in denying the defendant's motion for new trial on the general grounds or [in which] the trial court expressed its belief that it had no discretion to grant a new trial despite disagreeing with the jury's verdict."[28] So, Rivera's contention that the trial court failed to conduct a "thirteenth juror" review under OCGA §§ 5-5-20 and 5-5-21 lacks merit.[29]

---

[27] *Price*, 305 Ga. at 613 (3) (punctuation omitted); *accord Hodges*, 309 Ga. at 592 (2).

[28] *Price*, 305 Ga. at 613 (3) (punctuation omitted).

[29] *See Hodges*, 309 Ga. at 592 (2) (holding although trial court's order denying defendant's motion for new trial on the general grounds failed to indicate whether the trial court weighed the evidence presented at trial and failed to indicate whether the court exercised its discretion to sit as a 'thirteenth juror' pursuant to OCGA §§ 5-5-20 and 5-5-21, nothing indicated trial court was unaware of its responsibility or used the wrong standard of review and, thus, defendant's argument court failed to properly review his motion for new trial lacked merit); *Price*, 305 Ga. at 612-13 (3) (explaining although trial court's order denying motion for new trial entailed only one sentence, in which it noted it considered counsel's arguments, nothing in order indicted court failed to exercise its discretion as the thirteenth juror, so we presume it did so). While the trial court's order denying Rivera's motion for new trial was sufficient, going forward, an explicit statement by the trial court in its orders that it conducted a review on general grounds would be a better practice.

16

For all these reasons, we affirm Rivera's convictions and the denial of his motion for new trial.

*Judgment affirmed. Mercier, C. J., and Land, J., concur.*